EXHIBIT 2

**COURT OF COMMON PLEAS, LYCOMING COUNTY, PENNSYLVANIA**
**CASE MONITORING NOTICE**

| | | |
|---|---|---|
| CITY OF WILLIAMSPORT, | : | IN THE COURT OF COMMON PLEAS OF |
| Plaintiff | : | LYCOMING COUNTY, PENNSYLVANIA |
| | : | |
| vs. | : | DOCKET NO. 16-0520 |
| | : | |
| CNA INSURANCE COMPANIES and | : | |
| NATIONAL FIRE INSURANCE OF | : | |
| HARTFORD, | : | |
| Defendants | : | |

Claim E2C22084
Response due 1/30

I. This matter is:

_____ **Mortgage Foreclosure** (file once an **Answer** has been filed). Time needed for trial
_____ .

_____ **Credit Card Collection Case** (file once an **Answer** has been filed)
        a) ____ Arbitration. ($50,000 or less) Time needed for discovery? _____ months
        b) ____ Trial. Fast track (6-12 months) ____ Normal track (12-18 months) ____

_____ **Forfeiture** (file once an **Answer** has been filed)

_____ **Administrative Agency Appeal** (file with **Notice of Appeal**)

__X__ **General Civil Case** (file with **Amended Complaint**):
        a) ____ Arbitration. ($50,000 or less) Time needed for discovery? _3_ months
        b) ____ Fast track (6–12 months)
        c) _X_ Normal track (12–18 months)
        d) ____ Complex track (18-24 months)

_____ **Other.** Action requested: _____

_____

II.  Jury trial demanded? __X__ YES ____ NO

III.  Please note any special scheduling concerns: _____

_____

Name of filing counsel or pro se party:  J. David Smith, Esquire for Plaintiff
Address:  835 West Fourth Street, Williamsport, PA 17701

Opposing counsel or pro se party:
Defendants:  CNA Insurance Companies and National Fire Insurance of Hartford
Address for both: 333 South Wabash Avenue, Chicago, Illinois 60604

CITY OF WILLIAMSPORT,      :  IN THE COURT OF COMMON PLEAS OF
                     Plaintiff  :  LYCOMING COUNTY, PENNSYLVANIA
                        :
      vs.           :  DOCKET NO. 16-0520
                        :
CNA INSURANCE COMPANIES and  :
NATIONAL FIRE INSURANCE OF  :
HARTFORD,              :
            Defendants  :

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

> Pennsylvania Bar Association
> 100 South Street, P. O. Box 186
> Harrisburg, PA 17108-0186
> Telephone (800) 692-7375

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

> North Penn Legal Services
> 329 Market Street
> Williamsport, PA 17701
> Telephone 570-323-8741

## AMERICANS WITH DISABILITIES ACT OF 1990

The Court of Common Pleas of Lycoming County is required by law to comply with the Americans With Disabilities Act of 1990. For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact the office of the Lycoming County Court, Administrator, Lycoming County Courthouse, 48 West Third Street, Williamsport, PA 17701, Telephone No. (570) 327-2330. All arrangements must be made at least 72 hours prior to any hearing or business before the Court. You must attend the scheduled conference or hearing.

McCORMICK LAW FIRM

By: _____

J. David Smith, I.D. No. 27813
Austin White, I.D. No. 312789
Attorneys for Plaintiff
City of Williamsport

835 West Fourth Street
Williamsport, PA 17701
(570) 326-5131

CITY OF WILLIAMSPORT,                    :   IN THE COURT OF COMMON PLEAS OF
                Plaintiff   :   LYCOMING COUNTY, PENNSYLVANIA
                                   :
        vs.                          :   DOCKET NO. 16-0520
                                   :
CNA INSURANCE COMPANIES and              :
NATIONAL FIRE INSURANCE OF               :
HARTFORD,                                :
                Defendants   :

## COMPLAINT

Plaintiff, the City of Williamsport (the "City"), by and through its attorneys, hereby files this complaint against the defendants, and in support thereof avers as follows:

1.      Plaintiff, City of Williamsport, is a city of the third class organized and existing under Pennsylvania law, situated within Lycoming County, and has a mailing address of 245 West Fourth Street, Williamsport, Pennsylvania 17701.

2.      Defendant, CNA Insurance Companies, is a duly licensed insurance carrier, and a wholly owned subsidiary of defendant National Fire Insurance Company of Hartford, with a mailing address of 333 South Wabash Avenue, Chicago, Illinois 60604.

3.      Defendant, National Fire Insurance Company of Hartford, is a duly licensed insurance carrier, with a mailing address of 333 South Wabash Avenue, Chicago, Illinois 60604.

4.      This action was commenced on April 7, 2016 by the City filing a praecipe for a writ of summons, with a writ of summons being issued by the Lycoming County Prothonotary against each of the defendants on that same day.   Defendants were served with the writs shortly thereafter. <u>See</u> Proof of Service filed April 19, 2016.

5.      Defendants advertise, solicit and conduct insurance business in the Commonwealth of Pennsylvania.

6.     For the policy period of January 1, 2014 through January 1, 2015, the City of

Williamsport purchased and maintained from the defendants certain insurance policies, to

include an Automobile Policy (No. 419708561) (the "Automobile Policy") and a Law

Enforcement Liability Policy (No. 419711301) (the "Law Enforcement Policy").  See

Automobile Policy, Declarations, and Forms, attached hereto as Exhibit "A"; Law Enforcement

Policy, Declarations, and Forms, attached hereto as Exhibit "B."

7.     The Automobile Policy had a $1,000,000.00 combined single limit.  See Ex. A.

8.     The Law Enforcement Policy had a $1,000,000.00 limit for each wrongful act,

with an aggregate limit of $3,000,000.00, and a deductible of $5,000.00.  See Ex. B.

9.     For the aforementioned policy period, the policy premium paid by the City for the

Automobile Policy was $65,635.00.  See Ex. A.

10.     For the aforementioned policy period, the policy premium paid by the City for the

Law Enforcement Policy was $48,788.00.  See Ex. B.

11.     In January of 2014, the City employed Jonathan Deprenda as a police officer

(hereinafter "Officer Deprenda").

12.     On January 12, 2014, Officer Deprenda was acting within the course and scope of

his employment with the City, when, while pursuing a fleeing vehicle, he collided with another

car, which resulted in the death of the other driver, James David Robinson (the "Accident").

13.     The City submitted timely claims to the defendants under both the Automobile

Policy and the Law Enforcement Policy, to obtain coverage for claims being made as a result of

the Accident.

14.     The defendants denied coverage under the Law Enforcement Policy, claiming that the "auto" exclusion applied, which exclusion excludes coverage for a claim arising out of the operation, use, or control of an automobile.

15.     The defendants partially denied coverage under the Automobile Policy, claiming that the insurance did not apply to claims in excess of $500,000.00.

16.     The decedent's family initiated a lawsuit against, *inter alia*, the City and Officer Deprenda.  See Nancy Robinson Westbrooks, Administrator of the Estate of James David Robinson, deceased, v. Jonathan DePrenda et al, United States District Court Civil Action No. 14-1114, Complaint attached hereto as Exhibit "C" (hereinafter referred to as the "Underlying Action").

17.     In the Underlying Action, the plaintiff alleged one count against the City for negligence, one count against Officer Deprenda for negligence, counts against both the City and Officer Deprenda for civil right violations (under 42 U.S.C. § 1983), and a wrongful death and a survival cause of action against each defendant. See Ex. C.

18.     On or about November 2, 2015, the Underlying Action settled for a gross sum of $1,000,000.00 to be paid by the City together with some non-economic terms. See Settlement Petition and Order, attached hereto as Exhibit "D" (the "Settlement").

19.     In connection with the Settlement, defendants herein refused to indemnify the City and pay any amount in excess of $500,000.00.

20.     The defendants refusal was despite the fact that the Automobile Policy had a policy limit of $1 Million, and the Law Enforcement Policy had a policy limit of $1 Million. See Ex. A and Ex. B.

3

21.     The City was thus forced to finance the additional $500,000.00 in order to fulfill its financial obligations under the terms of the Settlement.

22.     The claims made within the Underlying Action and the settlement itself should have been fully covered by plaintiff's Automobile Policy, and/or the Law Enforcement Policy, without exclusions.

## COUNT I – DECLARATORY JUDGMENT
## THE AUTOMOBILE POLICY

23.     The averments of paragraphs 1 through 22 are incorporated by reference as if fully set forth herein.

24.     The City's Automobile Policy provides, in pertinent part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

See Ex. A, at section 2(A).

25.     The Automobile Policy includes a single occurrence policy limit of $1 Million.

26.     The City owned the police car operated by Officer Deprenda on January 12, 2014.

27.     The policy provides coverage for "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow" as a covered insured.

28.     By virtue of the foregoing provisions, Officer Deprenda was an insured under the Automobile Policy, because he was a City employee using a City vehicle within the course and scope of his employment at the time of the accident.

29.     The Underlying Action alleges that, *inter alia*, the decedent's bodily injury and death was caused by an accident that was the result of Officer Deprenda's alleged negligence, and alleged negligence of the City.

4

30. If proven and a judgment entered against the City, such a judgment would be a loss within the coverage provided by the Automobile Policy.

31. Likewise, the Settlement was a loss within the coverage provided by the Automobile Policy.

32. Accordingly, pursuant to the express and implied terms of the Automobile Policy, defendants are required to indemnify the City for the full settlement sum of $1,000,000.00.

33. The defendants' obligations to indemnify the City were not extinguished by their payment of only one-half of the Settlement.

34. The Court should declare that the duty to indemnify extends to the entire Settlement, and thus the defendants must reimburse the City for the $500,000.00 it was forced to contribute to the Settlement due to defendants' denials.

WHEREFORE, plaintiff requests that the Court enter judgment in its favor and declare that the defendants:

     (a) had/have an obligation to indemnify the City for the full Settlement of $1,000,000.00 in the Underlying Action;

     (b) must reimburse the City the $500,000.00 it contributed to the Settlement, including all interest and fees associated with financing the same; and

     (c) must reimburse the City its costs and legal fees incurred in the Underlying Action and in the instant action.

And, that the Court grant such supplementary relief as the Court may be appropriate under the Declaratory Judgments Act.

## COUNT II – DECLARATORY JUDGMENT
## THE LAW ENFORCEMENT POLICY

35.     The averments of paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36.     The Law Enforcement Policy provides that:

> We will pay those sums that the insured becomes legally obligated to pay as compensatory civil damages because of "injury." This insurance applies only to such "injury" that results from a "wrongful act" to which this insurance applies…

See Ex. B. at section I (1.)

37.     The defendants denied coverage on the Law Enforcement Policy under the auto exclusion, which excludes coverage for "damages arising out of the ownership, maintenance, management, operation, use, control, loading or unloading of any "automobile…" See Ex. B at Section I (2.).

38.     However, the claims made in the Underlying Action included, *inter alia*, the allegation that the City negligently failed to supervise Deprenda; failed to properly train Deprenda; failed to create, implement, and or enforce policies and procedures relating to the operation of motor vehicles; failed to create, implement, and or enforce policies and procedures relating to responding to calls involving other officers; and, failed to create, implement, and or enforce policies and procedures relating to calls which have been called off and/or reported to be over. See Ex. C.

39.     Those claims, in whole or in part, are not excluded by the "automobile" exclusion, and thus are covered claims under the Law Enforcement Policy.

40.     Additionally, the defendants denied coverage under the Law Enforcement Policy because the claims made in the underlying Action were purportedly not "injuries" covered by the policy. See Letter dated April 27, 2015 attached hereto as Exhibit "E."

41.     The Law Enforcement Policy provides that: "Injury" means "bodily injury", "property damage" or "personal injury" that the insured did not expect or intend, and that arises out of the insured's duties to provide law enforcement and/or other activities approved by the insured.

42.     The allegations within the Underlying Action included allegations that the injury was not expected or intended, and that it arose out of the law enforcement activities of the City.

43.     Those claims, in whole or in part, are included under the definition of "injury" and thus are covered claims under the Law Enforcement Policy.

44.     Furthermore, the Law Enforcement Policy provides that: "Personal injury", means injury, other than "bodily injury" arising out of...a violation of civil rights, unless uninsurable by law.

45.     The allegations within the Underlying Action included allegations that civil rights violations resulted in personal injuries, *inter alia*, the allegations that:

    a.  the City negligently failed to supervise Deprenda;

    b.  failed to properly train Deprenda;

    c.  failed to create, implement, and or enforce policies and procedures relating to the operation of motor vehicles;

    d.  failed to create, implement, and or enforce policies and procedures relating to responding to calls involving other officers;

    e.  failed to create, implement, and or enforce policies and procedures relating to calls which have been called off and/or reported to be over;

7

    f.  employed policies and/or procedures which recklessly disregarded and/or were deliberately indifferent to, the safety and constitutional rights of the public relating to the operation of motor vehicles by police officers;

    g.  engaged in customs and/or practices which recklessly disregarded and/or are deliberately indifferent to, the safety and constitutional rights of the public relating to the operation of motor vehicles by police officers; and,

    h.  failed to appropriately discipline Mr. Deprenda for prior operation of a motor vehicle with reckless disregard and/or deliberate indifference to the safety/and or constitutional rights of others. See Ex. C.

46.    Those claims, in whole or in part, are included under the definition of "personal injury" and thus are covered claims under the Law Enforcement Policy.

47.    Nevertheless, the defendants refused coverage under the Law Enforcement Policy, which was unlawful and contrary to the City's rights under the insurance contract.

48.    Therefore, to the extent the Settlement is not covered by the Automobile Policy, which is specifically denied, the City submits that in the alternative should be covered by the Law Enforcement Policy.

WHEREFORE, plaintiff requests that the Court enter judgment declaring that the defendants:

    (a)  Had/have an obligation to indemnify the City for the full Settlement of $1 Million in the Underlying Action;

    (b)  must reimburse the City the $500,000.00 it contributed to the Settlement; and

(c)    must reimburse the City its costs and legal fees incurred in the Underlying Action and in the instant action.

The City also requests that the Court grant such further relief as the Court may deem appropriate.

## COUNT III – BREACH OF CONTRACT

49.    The averments of paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50.    As set forth above, in return for substantial premiums paid by the City, the defendants entered into insurance agreements with the City, to include the Automobile Policy and the Law Enforcement Policy.

51.    Within the insurance agreements, the defendants promised, *inter alia*, to pay all sums due by the City for claims covered by the policies.

52.    In consideration for premiums paid, the defendants contractually obligated themselves to indemnify the City for covered claims, which obligation arises whenever an allegation states a claim to which the policy potentially applies. See United States Fire Ins. Co. v. Rothenberg, 1998 U.S. Dist. LEXIS 15009 (E.D. Pa. 1998).

53.    The claims made in the Underlying Action are covered by the policies, either jointly or in the alternative.

54.    Despite acknowledging the claims made and having all pertinent information available to them, the defendants refused to indemnify the City for the additional $500,000.00 owed for the Settlement of the Underlying Action.

55.    That refusal to indemnify and to pay the additional $500,000.00 was a breach of the insurance contracts between the City and the defendants.

56.     As a direct and proximate result of the defendants' breach of their contractual obligations, the City has been deprived of the benefits of insurance contracts for which the City has paid substantial premiums, causing the City substantial damage.

WHEREFORE, the City of Williamsport respectfully requests judgment in its favor in an amount in excess of the limits of compulsory arbitration, plus costs, attorneys' fees, interest, incidental/consequential damages, and such further relief as the Court may deem appropriate.

## COUNT III – VIOLATION OF 42 Pa. C.S. § 8371

57.     The averments of paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58.     The City's insurance contracts with the defendants obligated the defendants to provide indemnity coverage to the City for the Underlying Action and the Settlement.

59.     Indeed, defendants, as insurance companies, had a duty to act with the utmost good faith toward the City, the policy holder.

60.     Through their failure to indemnify the City and pay the full Settlement Amount, the defendants have violated the bad faith statute 42 Pa. C.S. § 8371.

61.     Indeed, the defendants acted in bad faith when they denied responsibility to pay for the full Settlement Amount, placing their own financial interest above the City's right to secure the benefit of the policies for which it paid substantial premiums.

62.     The defendants lacked a reasonable basis for failing to indemnify the City.

63.     Because of the defendants' bad faith actions, the City has suffered and will continue to suffer, substantial damages.

64.     As a result, the defendants are liable for acting in bad faith, and subject to the additional relief authorized under 42 Pa. C.S. § 8371.

WHEREFORE, the City requests that the Court enter judgment in its favor and against the defendants, in an amount in excess of the limits of compulsory arbitration. In addition, the City requests that the Court, pursuant to 42 Pa. C.S. § 8371, award to the City interest on the amount of the claim from the date the claim was made by the City, in an amount equal to the prime rate of interest plus 3%; punitive damages; all Court costs and attorneys' fees incurred by the City in the instant action; and such further relief as the Court may deem appropriate.

McCORMICK LAW FIRM

By:_____
J. David Smith, I.D. No. 27813
Austin White, I.D. No. 312789
Attorneys for Plaintiff,
City of Williamsport

835 West Fourth Street
Williamsport, PA 17701
(570) 326-5131

11

Exhibit A

# MUNICIPAL PACKAGE PROGRAM

**COMMERCIAL AUTOMOBILE COVERAGE**



☐ *New Business Declaration*

☒ Renewal of 419708561

| POLICY NUMBER | COVERAGE PROVIDED BY | POLICY PERIOD |
|---|---|---|
| MNA419708561 | NATIONAL FIRE INSURANCE OF HARTFORD<br>CNA PLAZA<br>CHICAGO, ILLINOIS 60685 | 01/01/2014 to 01/01/2015 |

**INSURED NAME AND ADDRESS**
Williamsport, City of
245 W. Fourth Street
Williamsport, PA 17701

**AGENCY NAME AND ADDRESS**
Henry Dunn, Inc
49 E. Forth St
Williamsport, PA 17701-6355

**BROKER NAME AND ADDRESS:**
McKee Risk Management, Inc.
610 Freedom Business Center Drive
Suite 300
King of Prussia, PA 19406
CNA PRODUCER #

**BRANCH NUMBER**
880

**BRANCH NAME AND ADDRESS**
CNA E&S PROGRAMS
333 SOUTH WABASH AVENUE
SUITE 2200
CHICAGO, IL 60585

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing address on the dates shown above.

The Named Insured is a MUNICIPALITY.

Your policy is composed of this Declarations, with the attached Common Policy Conditions, Coverage Forms, and Endorsements, if any. The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

The AUTOMOBILE Policy Premium is:   $65,635

The Terrorism Risk Premium (if elected) is:   N/A

In return for the payment of the premium, and subject to all the terms and conditions contained here-in, we agree to provide the insurance as stated.

**POLICY NUMBER**
MNA419708561

**INSURED NAME AND ADDRESS**
Williamsport, City of

**ITEM TWO:** SCHEDULE OF COVERAGES AND COVERED AUTOS

Each of these coverages will apply only to those autos shown as Covered Autos. Autos are shown as Covered Autos for a particular coverage by the entry of one or more of the symbols from the Covered Auto Section of the Business Auto Coverage Form next to the name of the Coverage. The limit displayed is the most we will pay for any one accident/loss.

See Note 3.

| COVERAGES | COVERED AUTO SYMBOL | LIMIT | PREMIUM |
|-----------|--------------------|-------|---------|
| Combined Single Limit | 1,8,9 | $1,000,000 | included |
| Personal Injury Protection | 5 | See Below | included |
| Uninsured Motorists | 6 | $35,000 | included |
| Underinsured Motorists | 6 | $35,000 | included |
| Comprehensive | 7,8,9 | Refer to Note 1 | included |
| Collision | 7,8,9 | Refer to Note 2 | included |

Note 1:

    ACV or Cost of Repair whichever is less minus deductible stated in Item Three, for each Covered Auto for all losses but no deductible applies to loss caused by fire or lightning. See Item Four for Hired or Borrowed Autos.

Note 2:

    ACV or Cost of Repair whichever is less minus deductible stated in Item Three, for each Covered Auto. See Item Four for Hired or Borrowed Autos.

Note 3:

    SUBJECT TO THE CONDITIONS DESCRIBED BELOW, THIS POLICY WILL NOT BE AUDITED/

    Any auto(s) the entity acquires during the term of the policy will be covered automatically for Liability and Physical Damage, provided it is an additional new auto or replaces an auto the entity previously owned which had Physical Damage coverage

    1)   The total additional auto(s) do not exceed of the number of vehicles currently on the original schedule by more than 10%.

    2)   The named insured submits a notice of the addition or replacement within 30 days after the entity acquires the auto(s) to the agency.

    3)   The agency forwards a copy of the change request to the Managing Agency shown in the declarations of this policy.

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| MNA419708561 | Williamsport, City of |

## ITEM THREE: SCHEDULE OF COVERED AUTOS YOU OWN AND COVERAGES

All vehicles are covered for the limits of liability as stated under Item Two unless other coverage/limits are indicated here.

| COVERAGE | DEDUCTIBLE | PREMIUM |
|---|---|---|
| **PHYSICAL DAMAGE** | | |
| Comprehensive | $500 | included |
| Collision | $500 | included |

**POLICY NUMBER**
MNA419708561

**INSURED NAME AND ADDRESS**
Williamsport, City of

**ITEM FOUR:** SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| COVERAGE | STATE | DEDUCT | RATE PER $100 COST OF HIRE | ESTIMATED COST OF HIRE* | FACTOR | PREMIUM |
|---|---|---|---|---|---|---|
| Excess Liability | PA | NOT COVERED | | | | |
| Primary Physical Damage | PA | $500 | | $25,000 | | |
| Comprehensive | | $500 | | | | |
| Collision | | $500 | | | | |

**TOTAL HIRED OR BORROWED PREMIUM:  INCLUDED**

*Cost of Hire means the total amount you incur for the hire of autos you do not own (not including autos you borrow or rent from your partners or employees or their family members). Cost of Hire does not include charges for services performed by motor carriers of property or passengers.

**POLICY NUMBER**
MNA419708561

**INSURED NAME AND ADDRESS**
Williamsport, City of

ITEM FIVE: SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Municipality | Number of Employees | On File With Company | included |

**Non-Ownership Liability Total Premium**      INCLUDED

POLICY NUMBER
MNA419708561

INSURED NAME AND ADDRESS
Williamsport, City of

## MISCELLANEOUS COVERAGES

| COVERAGE | DEDUCTIBLE | LIMIT | PREMIUM |
|----------|------------|-------|---------|

**Miscellaneous Coverage Total Premiums**     NOT APPLICABLE

**POLICY NUMBER**
MNA419708561

**INSURED NAME AND ADDRESS**
Williamsport, City of

## COMMERCIAL AUTOMOBILE LOSS PAYEE SCHEDULE

Any Loss Payee that has a financial interest in a covered auto for which we are providing physical damage coverage for that covered auto under this policy.

**POLICY NUMBER**
MNA419708561

**INSURED NAME AND ADDRESS**
Williamsport, City of

## ADDITIONAL INSURED - LESSOR SCHEDULE

Any Lessor of a covered auto for which we are providing any coverage for that covered auto under this policy.

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| MNA419708561 | Williamsport, City of |

## FORMS AND ENDORSEMENTS SCHEDULE

The following forms have been added to this policy.

| FORM NUMBER | FORM TITLE |
|---|---|
| CA 00 01 03 10 | Business Auto Coverage Form |
| CA 01 80 09 97 | Pennsylvania Changes |
| CA 20 02 03 10 | Audio, Visual & Data Electronic Equipment Coverage - Fire, Police and Emergency Vehicles |
| CA 20 15 12 04 | Mobile Equipment |
| CA 20 18 12 93 | Professional Services Not Covered |
| CA 20 30 03 10 | Emergency Vehicles - Volunteer Firefighters & Workers Injuries Excluded |
| CA 21 92 06 12 | Pennsylvania Uninsured Motorists Coverage - Nonstacked |
| CA 21 93 06 12 | Pennsylvania Underinsured Motorists Coverage - Nonstacked |
| CA 22 37 03 06 | Pennsylvania Basic First Party Benefits |
| CA 22 38 03 95 | Pennsylvania Added/Combo First Party Benefits |
| CA 23 94 03 06 | Silica or Silica-related Dust Exclusion |
| CA 24 02 12 93 | Public Transportation Autos |
| CA 99 15 12 93 | Governmental Bodies Amendatory Endorsement |
| CA 99 28 03 10 | Stated Amount Insurance |
| CA 99 33 02 99 | Employees as Insureds |
| CA 99 34 12 93 | Volunteers as Insureds |
| CA 99 37 03 10 | Garagekeepers Coverage |
| DCMNPCM 11 06 | CNA Common Policy Declarations |
| G-144207-B | CNA Pennsylvania UM/UIM Selection Rejection Form |
| G-144291-A | Economic Trade and Sanctions Condition |
| G-89001-E | Composite Rate Endorsement |
| SCA-23 500-C | CNA BA Plus Extended Coverage Endorsement |

| INTERLINE FORMS | FORM TITLE |
|---|---|
| IL 00 03 09 08 | Calculation of Premium |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement |
| IL 01 20 05 11 | Pennsylvania Changes - Defense Costs |
| IL 02 46 09 07 | Pennsylvania Changes - Cancellation and Nonrenewal |
| IL 09 10 07 02 | Pennsylvania Notice |
| IL 12 01 11 85 | Named Insured Continuation |

**\*\*\* PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY \*\*\***

| FORM NUMBER | FORM TITLE |
|---|---|

Countersignature

Chairman of the Board

Secretary



G-89001-E (Ed. 05/07)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## COMPOSITE RATE ENDORSEMENT

This endorsement modifies insurance provided under the following:

The premium for coverage shall be computed on the basis of premium shown below. The premium stated in the schedule is an estimated premium only. Upon termination of the policy, earned premium shall be computed by the application of the rates to the number of "autos," or other basis of premium shown. As stated in the schedule including any "autos" newly acquired or deleted during the policy period, if the earned premium exceeds the estimated advanced premium, you shall pay the excess to us; if less, we shall return to you the unearned portion paid. In no event shall the earned premium be less than the minimum premiums shown in the schedule below.

You shall maintain a record of dates of all "autos" acquired and deleted. Copies of such records shall be sent to us at the end of the policy period and at such times during the policy period as we may direct.

We shall be permitted to inspect your "autos" and to examine and audit your books and records at any time during the policy period and any extension thereof and within three years after the final termination of the policy.

| Coverages | Basis of Premium | Rates | Estimated Advance Premium | Minimum Premium |
|---|---|---|---|---|
| Liability | 84 power units | $ 332.119 | $27,898 | $20,923 |
| Comprehensive and Collision | 83 power units | $ 454.663 | $37,737 | $28,302 |

Definition of Premium Basis: Number of power units covered, excluding trailers

G-89001-E (Ed. 05/07)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number

| POLICY NUMBER<br>MNA419708561 | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| NAMED INSURED<br>CITY OF WILLIAMSPORT | | AUTHORIZED REPRESENTATIVE |

COVERAGE PARTS AFFECTED
COMMERCIAL AUTOMOBILE

### CHANGES

Named Insured continuation:

Municipal Authority of the City of Williamsport
City Recreation Commission
Bowman Field Commission
Brandon Park Commission
Ways Garden Commission
Williamsport Planning Commission
Urban Homestead Selection Board
Homestead Appeal Board
Vacant Property Review Committee
City of Williamsport Bureau of Transportation dba River Valley Transit
Williamsport Redevelopment Authority
Board of Health – City of Williamsport

Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,   1983          Page 1 of 1
                        Copyright, ISO Commercial Risk Services, Inc.,   1983

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2009

| 19 | Mobile Equip-ment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insur-ance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

© Insurance Services Office, Inc., 2009

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10   □

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

© Insurance Services Office, Inc., 2009

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

      (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

      (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

      (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

      However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2009

**b. War Or Military Action**

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

    **a.** Wear and tear, freezing, mechanical or electrical breakdown.

    **b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

    **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

    **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

    **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

    **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

    **a.** Permanently installed in or upon the covered "auto";

    **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

    **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

    **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

    **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

    **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

    **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

    **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

    **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

 © Insurance Services Office, Inc., 2009   ☐

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

a. There has been full compliance with all the terms of this coverage form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10     □

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph a. above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

© Insurance Services Office, Inc., 2009

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2009

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    (a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    (b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers; or

© Insurance Services Office, Inc., 2009

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2009

CA 20 18 12 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROFESSIONAL SERVICES NOT COVERED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusions:

This insurance does not apply to:

1. "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.

2. "Bodily injury" resulting from food or drink furnished with these services.

3. "Bodily injury" or "property damage" resulting from the handling of corpses.

CA 20 18 12 93          Copyright, Insurance Services Office, Inc., 1993

POLICY NUMBER:

COMMERCIAL AUTO
CA 20 15 12 04

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MOBILE EQUIPMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

### SCHEDULE

| Coverages | Covered "Auto" Vehicle Numbers | Limit Of Insurance | | Premium |
|---|---|---|---|---|
| Liability | | $ | Each "Accident" | $ |
| Auto Medical Payments | | $ | Each Person | $ |
| Personal Injury Protection or Equivalent No-Fault Coverage | | Separately Stated in Each P.I.P. Endorsement | | $ |
| Uninsured Motorists | | $ | Each "Accident" | $ |
| Underinsured Motorists (Indicate Only When Coverage Is Not Included in Uninsured Motorists Coverage) | | $ | Each "Accident" | $ |
| Comprehensive | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING | | $ |
| Collision | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO | | $ |

© ISO Properties, Inc., 2004

| Specified Causes of Loss | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ |
|---|---|---|---|

| Vehicle No. | Description Of Vehicles That Are Covered "Autos" |
|---|---|
| | |
| | |
| | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

B. The vehicles described in the Schedule will be considered covered "autos" and not "mobile equipment".

C. Liability Coverage does not apply to "bodily injury", "property damage" or "covered pollution cost or expense" resulting from the operation of any machinery or equipment that is on, attached to or part of any of these vehicles.

© ISO Properties, Inc., 2004                    CA 20 15 12 04

COMMERCIAL AUTO
CA 01 80 09 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

2. The following is added to Supplementary Payments:

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. The following is added to the **Loss Conditions** Section:

Paragraph A.2.b.(5) of the **Duties In The Event Of An Accident, Claim, Suit Or Loss** Condition is replaced by the following:

After we show good cause, submit to examination at our expense, by physicians of our choice.

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the insured shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

2. The following is added to the **General Conditions** Section:

**CONSTITUTIONALITY CLAUSE**

The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

CA 01 80 09 97                Copyright, Insurance Services Office, Inc., 1997                Page 1 of 1      □

POLICY NUMBER:                                              COMMERCIAL AUTO
                                                           CA 22 37 03 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PENNSYLVANIA BASIC FIRST PARTY BENEFIT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |
| **Countersignature Of Authorized Representative** |
| Name: |
| Title: |
| Signature: |
| Date: |

## SCHEDULE

| Benefits | Limit Of Insurance |
|---|---|
| **Medical Expense Benefits** | **Up to $5,000 per insured** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

CA 22 37 03 06                     © ISO Properties, Inc., 2005                     Page 1 of 3      □

## A. Coverage

We will pay the Basic First Party Benefit in accordance with the "Act" to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto".

## BENEFITS

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of Medical Expense Benefits. These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1. Care;
2. Recovery; or
3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury". If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury", medical expenses will be paid without limitation as to the time such further expenses are incurred.

## B. Who Is An Insured

1. You.
2. If you are an individual, any "family member".
3. Any person while "occupying" a covered "auto".
4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto".

   If a covered "auto" is parked and unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

## C. Exclusions

We will not pay First Party Benefits for "bodily injury":

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.
2. Sustained by any person while committing a felony.
3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

   a. You; or
   b. Any "family member".

5. Sustained by any person who, at the time of the "accident":

   a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or
   b. Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

   a. You; or
   b. Any "family member".

8. Sustained by any person while "occupying":

   a. A recreational vehicle designed for use off public roads; or
   b. A motorcycle, moped or similar type vehicle.

9. Arising directly or indirectly out of:

   a. A discharge of a nuclear weapon (even if accidental);
   b. War, including undeclared or civil war;
   c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   d. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2005

CA 22 37 03 06

**10.** From or as a consequence of the following whether controlled or uncontrolled or however caused:

   **a.** Nuclear reaction;

   **b.** Radiation; or

   **c.** Radioactive contamination.

**D. Limit Of Insurance**

  **1.** Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or in the Declarations.

  **2.** Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

**E. Changes In Conditions**

The Conditions are changed for First Party Benefits as follows:

  **1.** **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

  **2.** The following Conditions are added:

    **NON-DUPLICATION OF BENEFITS**

    No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

    **PRIORITIES OF POLICIES**

    We will pay First Party Benefits in accordance with the order of priority set forth by the "Act". We will not pay if there is another insurer at a higher level of priority. The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

| | |
|---|---|
| **First** | The insurer providing benefits to the "insured" as a named insured. |
| **Second** | The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act". |
| **Third** | The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident". |
| **Fourth** | The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is: |

    **a.** Not "occupying" an "auto"; and

    **b.** Not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

  **1.** The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible;

  **2.** If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

  **3.** The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

  **4.** The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

**F. Additional Definitions**

As used in this endorsement:

  **1.** "Auto" means a self-propelled motor vehicle, or trailer required to be registered, operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

    **a.** By muscular power; or

    **b.** On rails or tracks.

  **2.** The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

  **3.** "Family member" means a resident of your household who is:

    **a.** Related to you by blood, marriage or adoption; or

    **b.** A minor in your custody or in the custody of any other "family member".

  **4.** "Occupying" means in, upon, getting in, on, out or off.

 © ISO Properties, Inc., 2005

POLICY NUMBER:                                                COMMERCIAL AUTO
                                                             CA 22 38 03 95

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA ADDED AND COMBINATION FIRST PARTY BENEFITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

  PENNSYLVANIA BASIC FIRST PARTY BENEFIT

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | |
|---|---|
| Named Insured | Countersigned By |

(Authorized Representative)

BASIC FIRST PARTY BENEFIT is changed as follows:

### SCHEDULE

As indicated below, Added First Party Benefits or Combination First Party Benefits apply instead of the Basic First Party Benefit.  The limits of liability shown for the benefits selected below replace the limits of liability shown in the Schedule for the Basic First Party Benefit.

| Benefits | Limit of Liability (per insured) |
|---|---|
| ☒ **Added First Party Benefits** | |
| Medical Expense Benefits | Up to $ 10,000 |
| Work Loss Benefits | Up to $ 5,000 subject to a maximum of $ 1,000 per month |
| Funeral Expense Benefits | Up to   $ 1,500 |
| Accidental Death Benefits | $ |
| ☐ **Combination First Party Benefits** | |
| Maximum Total Limit for All Benefits | Up to $ |
| Subject to the following individual limits: | |
| Medical Expense Benefits | No specific dollar amount |
| Work Loss Benefits | No specific dollar amount |
| Funeral Expense Benefits | Up to $2,500 |
| Accidental Death Benefits | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

CA 22 38 03 95          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2      ☐

## A. COVERAGE

We will pay Added First Party Benefits or Combination First Party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto". We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the "accident".

In addition to the Medical Expense Benefits described in the Basic First Party Benefit endorsement, Added First Party Benefits and Combination First Party Benefits also consist of:

1. Work Loss Benefits consisting of:

   a. Loss of income.  Up to 80% of the gross income actually lost by an "insured".

   b. Reasonable expenses actually incurred to reduce loss of income by hiring:

      (1) Special help, thereby enabling the "insured" to work; or

      (2) A substitute to perform the work a self-employed "insured" would have performed.

   However, Work Loss Benefits do not include:

   a. Loss of expected income for any period following the death of an "insured"; or

   b. Expenses incurred for services performed following the death of an "insured"; or

   c. Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work after the "accident" because of the "bodily injury".

2. Funeral Expense Benefits.  Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident".

3. Accidental Death Benefits.  A death benefit paid if "bodily injury" resulting from an "accident" causes the death of you or any "family member" within 24 months from the date of the "accident".

## B. EXCLUSIONS

In addition to the exclusions in the Basic First Party Benefit endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

## C. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First Party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for the Basic First Party Benefit.  This provision will not change our total limit of liability.

## D. CHANGES IN CONDITIONS

In addition to the CONDITIONS applicable to the Basic First Party Benefit endorsement, the following CONDITION also applies:

PAYMENT OF ACCIDENTAL DEATH BENEFITS

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse; or

2. If there is no surviving spouse, the deceased "insured's" surviving children; or

3. If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Copyright, Insurance Services Office, Inc., 1994

CA 22 38 03 95

CA 24 02 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC TRANSPORTATION AUTOS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE for a covered "auto" licensed or used to transport the public is changed as follows:

The CARE, CUSTODY OR CONTROL exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving property of the "insured's" passengers while such property is carried by the covered "auto."

CA 24 02 12 93          Copyright, Insurance Services Office, Inc., 1993

COMMERCIAL AUTO
CA 23 94 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following exclusion is added to Paragraph B. **Exclusions of Section II – Liability Coverage** in the Business Auto, Motor Carrier and Truckers Coverage Forms and for **"Garage Operations" – Covered "Autos"** in the Garage Coverage Form:

**SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE**

This insurance does not apply to:

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust."

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

3. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any "insured" or by any other person or entity.

B. **Additional Definitions**

As used in this endorsement:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

     Copyright, ISO Properties, Inc., 2005

CA 99 15 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GOVERNMENTAL BODIES AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Any land motor vehicle or "trailer" you own or lease that is designed for travel on public roads is an "auto" and not "mobile equipment" if the sole reason for considering it "mobile equipment" is such vehicle is used solely on roads you own.

    Copyright, Insurance Services Office, Inc., 1993

COMMERCIAL AUTO

CA 99 28 10 01

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

## SCHEDULE

The insurance provided by this endorsement is reduced by the following deductible(s) :

| Vehicle Number | Coverage | Limit Of Insurance | | Premium |
|---|---|---|---|---|
| | | $ On file | Less $ Deductible | |
| | | $ | Less $ Deductible | |
| | | $ | Less $ Deductible | |
| | | $ | Less $ Deductible | |
| | | | Total Premium | |

Note

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limit Of Insurance And Deductible Provision which follows.

| Designation Or Description Of Covered "Autos" | | |
|---|---|---|
| Vehicle Number | Model Year | Trade Name And Model |
| | | Class 7909s |

(If no entry appears above, information to complete this endorsement will be shown in the Declarations as applicable to this endorsement. )

A. This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

B. For a covered "auto" described in the Schedule, the Physical Damage Coverage Limit Of Insurance is replaced by the following:

**Limit Of Insurance And Deductible**

1. The most we will pay for "loss" in any one "accident" is the least of the following amounts minus any applicable deductible shown in the Schedule:

   a. The actual cash value of the damaged or stolen property as of the time of the "loss";

   b. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

   c. The amount shown in the Schedule.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**C. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations or Schedule. Any Comprehensive Coverage Deductible shown in the Declarations or Schedule does not apply to "loss" caused by fire or lightning.

CA 99 28 10 01                                                           Pages 1-2

© ISO Properties, Inc., 2000

COMMERCIAL AUTO
CA 99 34 12 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SOCIAL SERVICE AGENCIES – VOLUNTEERS AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision:

Anyone volunteering services to you is an "insured" while using a covered "auto" you don't own, hire or borrow to transport your clients or other persons in activities necessary to your business.  Anyone else who furnishes that "auto" is also an "insured".

CA 99 34 12 93                    Copyright, Insurance Services Office, Inc., 1993                    Page 1 of 1    □

COMMERCIAL AUTO
CA 99 33 02 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Liability Coverage, Paragraph A.1. Who Is An Insured** Provision:
Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 99 37 03 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# GARAGEKEEPERS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured:  City of Williamsport |
| --- |
| Endorsement Effective Date: |
| **Countersignature Of Authorized Representative** |
| Name: |
| Title: |
| Signature: |
| Date: |

### SCHEDULE

| Location Number | Address Where You Conduct Garage Operations (Main Location) | |
| --- | --- | --- |
| | Per schedule on file | |
| **Coverages** | **Limit Of Insurance And Deductible** | **Premium** |
| Comprehensive Or Specified Causes Of Loss | $    Minus | $ |
| | $    Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism Subject To | |
| | $    Maximum Deductible For All Such Loss In Any One Event; | |
| |    Or | |
| | $ 50,000    Minus | |
| | $ 500    Deductible For All Perils Subject To | |
| | $ 2,500    Maximum Deductible For All Such Loss In Any One Event. | |
| Collision | $ 50,000    Minus | $ |
| | $ 500    Deductible For Each Customer's Auto. | |

CA 99 37 03 06        © ISO Properties, Inc., 2005        Page 1 of 5    □

| Location Number | Address Where You Conduct Garage Operations | |
|---|---|---|
| Coverages | Limit Of Insurance And Deductible | Premium |
| | $      Minus | $ |
| | $      Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism Subject To | |
| Comprehensive Or Specified Causes Of Loss | $      Maximum Deductible For All Such Loss In Any One Event; | |
| |      Or | |
| | $      Minus | |
| | $      Deductible For All Perils Subject To | |
| | $      Maximum Deductible For All Such Loss In Any One Event. | |
| Collision | $      Minus | $ |
| | $      Deductible For Each Customer's Auto. | |

| Location Number | Address Where You Conduct Garage Operations | |
|---|---|---|
| Coverages | Limit Of Insurance And Deductible | Premium |
| | $      Minus | $ |
| | $      Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism Subject To | |
| Comprehensive Or Specified Causes Of Loss | $      Maximum Deductible For All Such Loss In Any One Event; | |
| |      Or | |
| | $      Minus | |
| | $      Deductible For All Perils Subject To | |
| | $      Maximum Deductible For All Such Loss In Any One Event. | |
| Collision | $      Minus | $ |
| | $      Deductible For Each Customer's Auto. | |

| Total Premium For All Locations | $ |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

© ISO Properties, Inc., 2005
CA 99 37 03 06

**DIRECT COVERAGE OPTIONS**

Indicate below with an "X" which, if any, Direct Coverage Option is selected.

☐ **EXCESS INSURANCE**

If this box is checked, Garagekeepers Coverage remains applicable on a legal liability basis. However, coverage also applies without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" on an excess basis over any other collectible insurance regardless of whether the other insurance covers your or any other "insured's" interest or the interest of the "customer's auto's" owner.

☐ **PRIMARY INSURANCE**

If this box is checked, Garagekeepers Coverage is changed to apply without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" and is primary insurance.

**A.** This endorsement provides only those coverages:

1. Where a Limit of Insurance and a premium are shown for that coverage in the Schedule; and

2. For the location shown in the Schedule.

**B. Coverage**

1. We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The "customer's auto's" collision with another object; or

   (2) The "customer's auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft; or

   (3) Mischief or vandalism.

   **c. Collision Coverage**

   Caused by:

   (1) The "customer's auto's" collision with another object; or

   (2) The "customer's auto's" overturn.

2. We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. Who Is An Insured**

The following are "insureds" for "loss" to "customer's autos" and "customer's auto" equipment:

a. You.

b. Your partners (if you are a partnership), or members (if you are a limited liability company), "employees", directors or shareholders while acting within the scope of their duties as such.

**4. Coverage Extensions**

The following applies as Supplementary Payments. We will pay for the "insured":

a. All expenses we incur.

b. The costs of bonds to release attachments in any "suit" against an "insured" we defend, but only for bond amounts within our Limit of Insurance.

c. All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the "insured" in any "suit" against an "insured" we defend.

e. All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against an "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

## C. Exclusions

1. This insurance does not apply to any of the following:

   **a. Contractual Obligations**

   Liability resulting from any contract or agreement by which the "insured" accepts responsibility for "loss". But this exclusion does not apply to liability for "loss" that the "insured" would have in the absence of the contract or agreement.

   **b. Theft**

   "Loss" due to theft or conversion caused in any way by you, your "employees" or by your shareholders.

   **c. Defective Parts**

   Defective parts or materials.

   **d. Faulty Work**

   Faulty "work you performed".

2. We will not pay for "loss" to any of the following:

   a. Tape decks or other sound reproducing equipment unless permanently installed in a "customer's auto".

   b. Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

   c. Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "customer's auto" manufacturer for the installation of a radio.

   d. Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

3. We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limits Of Insurance And Deductibles

1. Regardless of the number of "customer's autos", "insureds", premiums paid, claims made or "suits" brought, the most we will pay for each "loss" at each location is the Garagekeepers Coverage Limit of Insurance shown in the Schedule for that location minus the applicable deductibles for "loss" caused by:

   a. Collision; or

   b. With respect to Garagekeepers Coverage Comprehensive or Specified Causes Of Loss Coverage:

   (1) Theft or mischief or vandalism; or

   (2) All perils.

2. The maximum deductible stated in the Schedule for Garagekeepers Coverage Comprehensive or Specified Causes of Loss Coverage is the most that will be deducted for all "loss" in any one event caused by:

   a. Theft or mischief or vandalism; or

   b. All perils.

3. Sometimes to settle a claim or "suit", we may pay all or any part of the deductible. If this happens you must reimburse us for the deductible or that portion of the deductible that we paid.

© ISO Properties, Inc., 2005

**E. Additional Definitions**

As used in this endorsement:

1. "Customer's auto" means a customer's land motor vehicle or trailer or semitrailer. This definition also includes any customer's auto while left with you for service, repair, storage or safekeeping. Customers include your "employees", and members of their households who pay for services performed.

2. "Loss" means direct and accidental loss or damage and includes any resulting loss of use.

3. "Garage operations" means the ownership, maintenance or use of locations for the purpose of a business of selling, servicing, repairing, parking or storing "customer's autos" and that portion of the roads or other accesses that adjoin these locations. "Garage operations" also includes all operations necessary or incidental to the performance of garage operations.

4. "Work you performed" includes:

   a. Work that someone performed on your behalf; and

   b. The providing of or failure to provide warnings or instructions.

COMMERCIAL AUTO
CA 99 48 03 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO, MOTOR CARRIER AND TRUCKERS COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph A.1. above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs a. and b. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.



SCA 23 500C<br>(Ed. 02/08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXTENDED COVERAGE ENDORSEMENT – BA PLUS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**A. Who Is An Insured**

The following are added, as "insureds," to Who Is An Insured (Section II):

1. a. Any incorporated entity of which the Named Insured owns a majority of the voting stock on the date of inception of this Coverage Form; provided that,

   b. The insurance afforded by this provision A.1. does not apply to any such entity that is an "insured" under any other liability "policy" providing "auto" coverage.

2. Any organization you newly acquire or form, other than a limited liability company, partnership or joint venture, and over which you maintain majority ownership interest.

   The insurance afforded by this provision A.2.:

   a. Is effective on the acquisition or formation date, and is afforded only until the end of the policy period of this Coverage Form, or the next anniversary of its inception date, whichever is earlier.

   b. Does not apply to:

      (1) "Bodily injury" or "property damage" caused by an "accident" that occurred before you acquired or formed the organization; or

      (2) Any such organization that is an "insured" under any other liability "policy" providing "auto" coverage.

3. An "employee" of yours is an "insured" while operating a covered auto or an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

   Policy, as used in this provision A., includes those policies that were in force on the inception date of this Coverage Form but:

   1. Which are no longer in force; or

   2. Whose limits have been exhausted.

**B. Coverage Extensions – Supplementary Payments**

The following Supplementary Payments, in Coverage Extensions (Section II), are revised as follows:

1. In a.(2), the limit for the cost of bail bonds is changed from $2,000 to $5,000, and

2. In a.(4), the limit for the loss of earnings is changed from $250 to $500 a day.

**C. Fellow Employee**

The Fellow Employee Exclusion contained in Section II – Liability Coverage does not apply.

Such coverage as is afforded by this provision C. is excess over any other collectible insurance.

**D. Physical Damage**

1. **Glass Breakage**

   The following paragraph is added to A.3., Glass Breakage (Section III):

   With respect to any covered "auto," any deductible shown in the Declarations will not apply to glass breakage if such glass is repaired, in a manner acceptable to us, rather than replaced.

2. **Transportation Expense**

   Paragraph A.4., Coverage Extension (Section III) is revised, with respect to transportation expense incurred by you, to provide:

   a. $60 per day, in lieu of $20; subject to

   b. $1,800 maximum, in lieu of $600.

3. **Loss of Use Expenses**

   Paragraph A.4., Coverage Extension (Section III) is revised, with respect to loss of use expenses incurred by you, to provide:

   a. $1,000 maximum, in lieu of $600.

4. **Audio, Visual And Data Electronic Equipment Coverage**

   The following is added to Coverage A. (Section III):

   a. PHYSICAL DAMAGE COVERAGE on a covered "auto" also applies to "loss" to any permanently installed electronic equipment

Case 4:19-cv-00170-MWB   Document 1-2   Filed 01/30/19   Page 63 of 157



SCA 23 500C
(Ed. 02/08)

including its antennas and other accessories

b. A $100 per occurrence deductible applies to the coverage provided by this provision D.4.

5. **Hired "Autos"**

Subject to the following, if Physical Damage coverage is provided under this policy then Hired Auto Physical Damage is extended to:

a. Any covered "auto" you lease, hire, rent or borrow without a driver; and

b. Any covered "auto" hired or rented by your "employee" without a driver, under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

c. The most we will pay for any one "accident" or "loss" is the actual cash value, cost of repair, cost of replacement or $50,000 whichever is less minus a $500 deductible for each covered auto. No deductible applies to "loss" caused by fire or lightning.

d. Such physical damage coverage for hired "autos" will:

   (1) Be excess over any other collectible insurance;

   (2) Include loss of use, provided it is the consequence of an "accident" for which the Named Insured is legally liable, and as a result of which a monetary loss is sustained by the leasing or rental concern.

   Such coverage as is provided by this provision (2) will be subject to a limit of $750 per "accident."

6. **Diminution In Value**

Subject to the following, the "diminution in value" exclusion (Section III) does not apply to:

a. Any covered "auto" of the private passenger type you lease, hire, rent or borrow, without a driver for a period of 30 days or less, while performing duties related to the conduct of your business; and

b. Any covered "auto" of the private passenger type hired or rented by your "employee" without a driver for a period of 30 days or less, under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

c. Such coverage as is provided by this provision is limited to a "diminution in value" loss arising directly out of accidental damage and not as a result of the failure to make repairs; faulty or incomplete maintenance or repairs; or the installation of substandard parts.

d. The most we will pay for "loss" to a covered "auto" in any one accident is the lesser of:

   (1) $5,000; or

   (2) 20% of the "auto's" actual cash value (ACV)

E  **Airbag Coverage**

The accidental discharge of an airbag shall not be considered mechanical breakdown.

F. **Duties In The Event Of Accident, Claim, Suit Or Loss**

1. The following, relative to your notification obligation, is added as the last paragraph of Loss Condition 2.a.:

   Your "employees" may know of an "accident" or "loss." This will not mean that you have such knowledge, unless such "accident" or "loss" is known to you or if you are not an individual, to any of your executive officers or partners or your insurance manager.

2. The following paragraph, relative to your obligation to provide us with documents, is added to Loss Condition 2.b.(2):

   Your "employees" may know of documents received concerning a claim or "suit." This will not mean that you have such knowledge, unless receipt of such documents is known to you or if you are not an individual, to any of your executive officers or partners or your insurance manager.

G. **Unintentional Omissions**

Your failure to disclose all hazards existing on the date of inception of this Coverage Form shall not prejudice you with respect to the coverage afforded provided such failure or omission is not intentional.

H. **International Coverage – Hired "Autos"**

Paragraph 7. Policy Period, Coverage Territory of the General Conditions is amended by the addition of the following:

The coverage territory is extended to anywhere in the world if:

a. A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 45 days or less; and

SCA 23 500C
(Ed. 02/08)                                                          Page 2 of 3



SCA 23 500C
(Ed. 02/08)

b. The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

### WARNING

Auto accidents in Mexico are subject to the laws of Mexico only – Not the laws of the United States of America. The Republic of Mexico considers any auto accident a criminal offense as well as a civil matter.

In some cases the coverage provided under this endorsement may not be recognized by the Mexican authorities and we may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.

I. **Bodily Injury – Mental Injury**

The definition of "bodily injury" (Section V) is revised as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury or death resulting from any of these.

J. **Drive Other Car Coverage – Executive Officers**

1. Any "auto" you don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by, and for Physical Damage Coverage while in the care, custody or control of, any of your "executive officers," except:

   a. An "auto" owned by that "executive officer" or a member of that person's household; or

   b. An "auto" used by that "executive officer" while working in a business of selling, servicing, repairing or parking "autos."

   Such Liability and/or Physical Damage Coverage as is afforded by this provision **J.1.** will be:

   (1) Equal to the greatest of those coverages afforded any covered "auto"; and

   (2) Excess over any other collectible insurance.

2. For purposes of this provision J., "executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document, and, while a resident of the same household, includes that person's spouse.

   Such "executive officers" are "insureds" while using a covered "auto" described in J.1.

Copyright, CNA Corporation, 2000.
Includes copyrighted material of the Insurance Services Office used with its permission.



G-144291-A
(Ed. 03/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the COMMON POLICY CONDITIONS:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

G-144291-A
(Ed. 03/03)

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

    If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

    b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

    c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 09 07                    © ISO Properties, Inc., 2006                    Page 1 of 2    □

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

IL 02 46 09 07    □

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The Insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2      □

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys,

reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

   Copyright, Insurance Services Office, Inc., 1982, 1983   IL 00 17 11 85   ☐

IL 00 03 09 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

IL 09 10 12 03

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

IL 09 10 12 03                    © ISO Properties, Inc., 2003                    Page 1 of 1    □

POLICY NUMBER:                                  COMMERCIAL AUTO
                                                        CA 99 37 03 10

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GARAGEKEEPERS COVERAGE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**   City of Williamsport |
| **Endorsement Effective Date:** |

### SCHEDULE

| Location Number | Address Where You Conduct Garage Operations (Main Location) | |
|---|---|---|
| | | |
| **Coverages** | **Limit Of Insurance And Deductible** | **Premium** |
| Comprehensive | $                                    Limit Of Insurance | $   Included |
| | $                                    Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism | |
| | $                                    Maximum Deductible For Loss Caused By Theft Or Mischief Or Vandalism In Any One Event | |
| | OR | |
| | $ 50,000                        Limit Of Insurance | |
| | $ 500                              Deductible For All Perils For Each Customer's Auto | |
| | $ 2,500                          Maximum Deductible For All Loss In Any One Event | |
| Collision | $ 50,000                        Limit Of Insurance | $   Included |
| | $ 500                              Deductible For Each Customer's Auto | |

| |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Direct Coverage Options**

Indicate below with an "X" which, if any, Direct Coverage Option is selected.

[X] **Excess Insurance**

If this box is checked, Garagekeepers Coverage remains applicable on a legal liability basis. However, coverage also applies without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" on an excess basis over any other collectible insurance regardless of whether the other insurance covers your or any other "insured's" interest or the interest of the "customer's auto's" owner.

[ ] **Primary Insurance**

If this box is checked, Garagekeepers Coverage is changed to apply without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" and is primary insurance.

**A.** This endorsement provides only those coverages:

1. Where a Limit of Insurance and a premium are shown for that coverage in the Schedule; and

2. For the location shown in the Schedule.

**B. Coverage**

1. We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

    **a. Comprehensive Coverage**

    From any cause except:

    (1) The "customer's auto's" collision with another object; or

    (2) The "customer's auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft; or

    (3) Mischief or vandalism.

    **c. Collision Coverage**

    Caused by:

    (1) The "customer's auto's" collision with another object; or

    (2) The "customer's auto's" overturn.

2. We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. Who Is An Insured**

The following are "insureds" for "loss" to "customer's autos" and "customer's auto" equipment:

a. You.

b. Your partners (if you are a partnership), or members (if you are a limited liability company), "employees", directors or shareholders while acting within the scope of their duties as such.

**4. Coverage Extensions**

The following applies as Supplementary Payments. We will pay for the "insured":

a. All expenses we incur.

b. The costs of bonds to release attachments in any "suit" against an "insured" we defend, but only for bond amounts within our Limit of Insurance.

c. All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

d. All court costs taxed against the "insured" in any "suit" against an "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

e. All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against an "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

© Insurance Services Office, Inc., 2009

CA 99 37 03 10

## C. Exclusions

1. This insurance does not apply to any of the following:

   a. **Contractual Obligations**

   Liability resulting from any contract or agreement by which the "insured" accepts responsibility for "loss". But this exclusion does not apply to liability for "loss" that the "insured" would have in the absence of the contract or agreement.

   b. **Theft**

   "Loss" due to theft or conversion caused in any way by you, your "employees" or by your shareholders.

   c. **Defective Parts**

   Defective parts or materials.

   d. **Faulty Work**

   Faulty "work you performed".

2. We will not pay for "loss" to any of the following:

   a. Tape decks or other sound-reproducing equipment unless permanently installed in a "customer's auto".

   b. Tapes, records or other sound-reproducing devices designed for use with sound-reproducing equipment.

   c. Sound-receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "customer's auto" manufacturer for the installation of a radio.

   d. Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

3. We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

## D. Limits Of Insurance And Deductibles

1. Regardless of the number of "customer's autos", "insureds", premiums paid, claims made or "suits" brought, the most we will pay for each "loss" at each location is the Garagekeepers Coverage Limit of Insurance shown in the Schedule for that location. Prior to the application of this limit, the damages for "loss" that would otherwise be payable will be reduced by the applicable deductibles for "loss" caused by:

   a. Collision; or

   b. With respect to Garagekeepers Coverage Comprehensive or Specified Causes Of Loss Coverage:

      (1) Theft or mischief or vandalism; or

      (2) All perils.

2. The maximum deductible stated in the Schedule for Garagekeepers Coverage Comprehensive or Specified Causes Of Loss Coverage is the most that will be deducted for all "loss" in any one event caused by:

   a. Theft or mischief or vandalism; or

   b. All perils.

3. Sometimes to settle a claim or "suit", we may pay all or any part of the deductible. If this happens you must reimburse us for the deductible or that portion of the deductible that we paid.

## E. Additional Definitions

As used in this endorsement:

1. "Customer's auto" means a land motor vehicle, "trailer" or semitrailer lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A "customer's auto" also includes any such vehicle left in your care by your "employees" and members of their households, who pay for services performed.

2. "Loss" means direct and accidental loss or damage and includes any resulting loss of use.

© Insurance Services Office, Inc., 2009

3. "Garage operations" means the ownership, maintenance or use of locations for the purpose of a business of selling, servicing, repairing, parking or storing "customer's autos" and that portion of the roads or other accesses that adjoin these locations. "Garage operations" also includes all operations necessary or incidental to the performance of garage operations.

4. "Work you performed" includes:

   a. Work that someone performed on your behalf; and

   b. The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2009

CA 99 37 03 10

POLICY NUMBER:

COMMERCIAL AUTO
CA 21 93 06 12

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "motor vehicle" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| |
|---|
| Named Insured: |
| Endorsement Effective Date: |

### SCHEDULE

| |
|---|
| Limit Of Insurance:   $  35,000                                    Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".

2. We will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

   (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. No judgment for damages arising out of a "suit" brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer or self-insurer under any disability benefits or similar law, except workers' compensation law.

2. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

3. Punitive or exemplary damages.

4. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any disability benefits or similar law, except workers' compensation law.

**E. Changes In Conditions**

The Conditions are changed for Pennsylvania Underinsured Motorists Coverage – Nonstacked as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly send us copies of the legal papers if a "suit" is brought.

   b. A person seeking Underinsured Motorists Coverage must also promptly notify us, in writing, of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to the "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

© Insurance Services Office, Inc., 2011
CA 21 93 06 12

2. **Legal Action Against Us** is replaced by the following:

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. Any legal action against us under this Coverage Form must be brought within four years after the date on which the "insured" either settles with, or receives a judgment against, the owner or driver of the "underinsured motor vehicle".

   c. Paragraph **2.b.** above of this condition does not apply if, within four years after the date on which the "insured" either settles with, or receives a judgment against, the owner or driver of the "underinsured motor vehicle":

     (1) We or the "insured" have made a written demand for arbitration in accordance with the provisions of this endorsement; or

     (2) The "insured" has filed an action for "bodily injury" against the owner or operator of the "underinsured motor vehicle" and such action is:

       (a) Filed in a court of competent jurisdiction; and

       (b) Not barred by the applicable state statute of limitations.

In the event that the four-year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "underinsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

4. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   a. If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second | The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as an individual Named Insured or "family member". |

   b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

   c. Where there is applicable insurance available under the first priority:

     (1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

     (2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

© Insurance Services Office, Inc., 2011

d. If two or more Coverage Forms or policies have equal priority:

   (1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

   (2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim.

**5.** The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Underinsured motor vehicle" means a vehicle for which the sum of all liability bonds or policies that apply at the time of an "accident" does not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle" does not include any vehicle designed for use mainly off public roads while not on public roads.

**4.** "Motor vehicle" means a vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but does not mean a vehicle operated upon rails.

 © Insurance Services Office, Inc., 2011 CA 21 93 06 12

POLICY NUMBER:

COMMERCIAL AUTO
CA 21 92 06 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "motor vehicle" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Named Insured: |
| Endorsement Effective Date: |

### SCHEDULE

| | |
|---|---|
| Limit Of Insurance:  $  35,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle".

2. No judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

    a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

    b. Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    b. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

© Insurance Services Office, Inc., 2011

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

2. The direct or indirect benefit of any insurer or self-insurer under any disability benefits or similar law, except workers' compensation law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. Any amount payable for damages under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible. This includes all sums paid for the same damages under this Coverage Form's Liability Coverage. This also includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured".

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any disability benefits or similar law, except workers' compensation law.

## E. Changes In Conditions

The Conditions are changed for Pennsylvania Uninsured Motorists Coverage – Nonstacked as follows:

1. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

2. Legal Action Against Us is replaced by the following:

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

© Insurance Services Office, Inc., 2011

CA 21 92 06 12

**b.** Any legal action against us under this Coverage Form must be brought within four years after the date on which the "insured" knows of the uninsured status of the owner or driver of the "uninsured motor vehicle". However, this Paragraph b. does not apply to an "insured" if, within four years after the date on which the "insured" knows of the uninsured status of the owner or driver of the "uninsured motor vehicle", we or the "insured" have made a written demand for arbitration in accordance with the provisions of this endorsement.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid, less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

**4. Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

**a.** If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|-------|---|
| Second | The Coverage Form or policy affording Uninsured Motorists Coverage to the "insured" as an individual Named Insured or "family member". |

**b.** Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

**c.** Where there is applicable insurance available under the first priority:

**(1)** The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

**(2)** The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

**d.** If two or more Coverage Forms or policies have equal priority:

**(1)** The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

**(2)** The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

**5.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

 © Insurance Services Office, Inc., 2011

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy applies at the time of an "accident".

   b. For which an insuring or bonding company:

      (1) Denies coverage;

      (2) Is or becomes insolvent; or

      (3) Is or becomes involved in insolvency proceedings.

   c. For which neither the driver nor owner can be identified. The vehicle or "trailer" must:

      (1) Hit an "insured", a covered "motor vehicle" or a vehicle an "insured" is "occupying"; or

      (2) Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "motor vehicle" or a vehicle an "insured" is "occupying".

      If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

   However, an "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

   b. Designed for use mainly off public roads while not on public roads.

4. "Motor vehicle" means a vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but does not mean a vehicle operated upon rails.

© Insurance Services Office, Inc., 2011

CA 21 92 06 12

COMMERCIAL AUTO
CA 20 30 03 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMERGENCY SERVICES – VOLUNTEER FIREFIGHTERS' AND WORKERS' INJURIES EXCLUDED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Liability Coverage** is changed by adding the following exclusions:

This insurance does not apply to:

1. "Bodily injury" to any volunteer firefighter or other volunteer worker of the "insured" if sustained while such person is engaged in volunteer firefighting, rescue squad or ambulance corps operations.

2. "Bodily injury" to any fellow volunteer firefighter or other volunteer worker of the "insured" if sustained in the course of volunteer firefighting, rescue squad or ambulance corps operations.

© Insurance Services Office, Inc., 2009

COMMERCIAL AUTO
CA 20 02 03 10

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE – FIRE, POLICE AND EMERGENCY VEHICLES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Physical Damage Coverage is changed as follows:

A. The exclusion relating to Audio, Visual and Data Electronic Equipment in Paragraphs B.4.c. and B.4.d. of the Business Auto and B.2.c. and B.2.d. of the Business Auto Physical Damage Coverage Forms does not apply to any equipment that is installed in or upon a covered "auto" which is:

   1. Owned by a police or fire department;

   2. Equipped as an emergency vehicle and owned by a political body or any of its agencies; or

   3. Equipped as an emergency vehicle and owned by a volunteer fire department, volunteer rescue squad or volunteer ambulance corps.

B. For covered "autos" described above, the Limit Of Insurance provision in Paragraph C.2. does not apply.

© Insurance Services Office, Inc., 2009

IL 01 20 05 11

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-Related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

2. Section II – Liability Coverage in Paragraph A. Coverage under the Business Auto, Garage and Motor Carrier Coverage Forms;

3. Section A – Coverage under the Legal Liability Coverage Form; and

4. Coverage C – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph B. also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

 © Insurance Services Office, Inc., 2010

POLICY NUMBER:                                                           COMMERCIAL AUTO
                                                               CA 99 28 03 10

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured:    City of Williamsport |
| --- |
| Endorsement Effective Date: |

### SCHEDULE

| The insurance provided by this endorsement is reduced by the following deductible(s): | | | |
| --- | --- | --- | --- |
| Vehicle Number | Coverage | Limit Of Insurance And Deductible | Premium |
| | Comprehensive & Collision | $ Less $ Deductible | Included |
| | | Total Premium | $ Included |

NOTE:

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limit Of Insurance and Deductible Provisions which follow.

| Designation Or Description Of Covered "Autos" | | |
| --- | --- | --- |
| Vehicle Number | Model Year | Trade Name And Model |
| Class 7909s on file | | |
| | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

A. This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

B. For a covered "auto" described in the Schedule, **Physical Damage Coverage – Limit Of Insurance** is replaced by the following:

**Limit Of Insurance**

1. The most we will pay for "loss" in any one "accident" is the least of the following amounts:

   a. The actual cash value of the damaged or stolen property as of the time of the "loss";

b. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

c. The Limit of Insurance shown in the Schedule.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

C. **Deductible**

1. For each covered "auto", our obligation to pay:

a. The actual cash value of the damaged or stolen property as of the time of the "loss" will be reduced by the applicable deductible shown in the Schedule;

b. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality will be reduced by the applicable deductible shown in the Schedule; or

c. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit of Insurance shown in the Schedule.

2. Any Comprehensive Coverage Deductible shown in the Schedule does not apply to "loss" caused by fire or lightning.

       © Insurance Services Office, Inc., 2009       CA 99 28 03 10

Exhibit B

| Producer: McKee Risk Management, Inc | Policy Type: Renewal of Prior Policy |
|---|---|
| | Renewal of : 419711301 |

## Law Enforcement Liability
## Coverage Form
## Declarations

**CNA**

CNA Insurance Companies
333 S. Wabash Ave.
Chicago, IL  60604

**1.**

| Producer Number | Branch | Prefix | Policy Number |
|---|---|---|---|
| 055289 | 880 | LEO | 419711301 |

INSURANCE PROVIDED BY THE COMPANY DESIGNATED BELOW

(A Stock Insurance company herein called the company)

**Named Insured & Address**

(Number & Street, City, State, & Zip Code)

Williamsport, City of

   245 W. Fourth Street

   Williamsport, PA   17701

**National Fire Insurance Company of Hartford**

**Retail Producer:**

McKee Risk Management, Inc
1060 First Avenue
Suite 202
King of Prussia, PA 19406

**Legal Entity:** Governmental Subdivision

**SIC Code:**  91113

**PR/PT:**  54/38

**2.**   **Policy Period:  From:** 01/01/2014 **To:**  01/01/2015

This policy becomes effective and expires at 12:01 a.m. Standard Time at Your Mailing Address Shown Above

**4.**   Subject to Audit:  No

**5.**   Limits of Insurance

   Each Wrongful Act Limit:   $1,000,000

   Aggregate Limit:        $3,000,000

   Deductible:               $5,000

**6.**   Business Description:  Law Enforcement

**7.**   Forms and endorsements applicable at time of issuance:

C-129531-A (Ed. 01/02)   C-15516-A (Ed. 03/03)   G-129286-A (Ed. 11/97)   G-129291-A37 (Ed. 02/98)G-129292-A (Ed.11/97)

G-129296-A (Ed. 11/97)   G-129300-A (Ed. 11/97)   G-129301-A (Ed. 11/97)   G-129306-A (Ed. 11/97)   G-144291-A (Ed. 03/03)

IL 00 17 (Ed. 11/85)   IL 02 46 (Ed. 09/96)

**8.**

| Deposit Premium | $48,788.00 |
|---|---|
| Minimum earned premium | $1,000 |

Terrorism Risk Insurance Act Premium $452     Included

Countersigned

G-129302-A

(ED. 11/97)

Date

Issued: 1/23/2014

Chairman of the Board

Secretary



# ADDITIONAL DECLARATIONS

For attachment to policy no. 419711301

The Additional Declarations below are an extension of those stated in the Declarations of the Policy to which this Schedule is attached

| SCHEDULE | | | | |
|---|---|---|---|---|
| Description of Hazards | Class Code | Premium Basis As Described in the Schedule | Rate | Advance Premium |
| Governmental Subdivision not State or Federal | 73142 | 70 (e) | | $48,788.00 |

G-129300-A
(ED. 11/97)



**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

# NON-MONETARY SUIT DEFENSE COSTS ENDORSEMENT

In consideration of an additional premium of   $2,197.00       the following is added and attached:

With respect to any "suit" against the Insured seeking non-monetary relief by reason of a "wrongful act", and which is otherwise covered by this policy, we will indemnify the Insured for reasonable costs and fees incurred in the defense of such "suit" subject to the following conditions:

1.  "Suit is first filed against the insured during the policy period and written report of the suit is received by us during the policy period or within sixty (60) days thereafter.

2.  The limit of our liability for such costs and fees shall not exceed $10,000 per suit and $50,000 in the aggregate for the policy period.

3.  Payment under this endorsement shall be in addition to our limits of insurance stated in the declarations and described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE.

4.  We shall have not duty to defend or investigate any such "suits".  However, we shall have the right at our option and expense, to take over the defense or associate in the defense of any "suit".

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured**   Williamsport, City of

**Policy Number**  419711301

**Endorsement Effective** 01/01/2014

**Countersigned By** _____
                            (Authorized Representative)

G-129301-A
(ED. 11/97)

Endorsement Number: _____



;S ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

# ADDITIONAL EXCLUSIONS
# PENNSYLVANIA AMENDATORY ENDORSEMENT

If shown by an "X" below as excluded, this insurance does not apply to any claim arising out of the "operations" or "activities" of:

**Excluded**

| | | |
|---|---|---|
| [X] | 1. | Airports, aircraft and other aviation related activities; |
| [X] | 2. | Fire fighting services; |
| [X] | 3. | Ambulance, emergency medical or rescue services; |
| [X] | 4. | Detention, correction or prison facilities; |

As used in this endorsement:

a.   "Operations" or "activities" include those of any unit, board, commission or similar body, and their officials, members, employees, volunteers, and any persons providing services under any mutual aid or similar agreement; and

b.   "Hospitals" includes all hospitals, clinics, nursing homes, rehabilitation facilities, psychiatric facilities and any other similar health care facilities.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured  Williamsport, City of                    Policy Number  419711301

Endorsement Effective  01/01/2014                       Countersigned By _____
                                                                        (Authorized Reperesentative)

G-129291-A37
(ED. 02/98)



THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

## INCIDENTAL PROFESSIONAL LIABILITY ENDORSEMENT

The following is added to the definition of "bodily injury" (DEFINITIONS - Section V):

c. Subject to 2.a. and b. above, coverage is provided for "bodily injury" arising out of the rendering of, or failure to render, "health care services" by your medical employees, other than medical doctors or dentists, while acting within the scope of their duties for you.

The following paragraph is added to 2. Exclusions, m. (COVERAGE - SECTION I):

However, this exclusion m. does not apply to the rendering of, or failure to render, "health care services" by your medical employees, other than medical doctors or dentists, while acting within the scope of their duties for you.

As used in this endorsement "health care services" means:

a. Medical or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

b. The furnishing or dispensing of drugs, medical supplies or appliances.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured    Williamsport, City of                          Policy Number          419711301

Endorsement Effective _____          Countersigned By    _____

G-129292-A                                                                                        (Authorized Representative)
(ED. 11/97)

Endorsement Number: _____



THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

# PRIOR CLAIMS AND POTENTIAL CLAIMS EXCLUSION

This policy does not apply to any claim or loss arising out of any matter that was listed, or should have been listed, in the application(s) on which we relied for the issuance of this policy.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured   Williamsport, City of                    Policy Number   419711301

Endorsement Effective _____          Countersigned By _____
                                                                    (Authorized Representative)

G-129296-A
(ED. 11/97)                                       Endorsement Number: _____



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION
AND WATER DAMAGE LIMITATION**

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY POLICY

A. The following exclusion is added to Paragraph 2. , Exclusions , of Section I - Coverage :

This insurance does not apply to:

**Fungi and Microbes**

(1) "Bodily injury" "personal injury" or "property damage" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes".

(2) Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

(3) "Property damage" caused by water where there also exists any "property damage" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes".

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense.

This exclusion does not apply where your business is food processing, sales, or serving, and the "bodily injury" is caused solely by food poisoning in connection with such processing, sales, or serving.

B. The following definitions are added to Section V - Definitions:

"Fungi" means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi.  But "fungi" does not include any fungi intended by the insured for consumption.

"Microbe" means any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease.  "Microbe" includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of microbes.  But "microbe" does not mean microbes that were transmitted directly from person to person.

Incorporates materials copyrighted by Insurance Services Office, reprinted with their permission.



G-144291-A
(Ed. 03/03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the COMMON POLICY CONDITIONS:

ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void ab initio (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.



## EXCEPTION TO TERRORISM EXCLUSION FOR CERTIFIED ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> LAW ENFORCEMENT LIABILITY POLICY
> PUBLIC OFFICIALS LIABILITY POLICY

A.  With respect to any exclusion of terrorism in this Coverage Part or attached to this Coverage Part by endorsement, such exclusion does not apply to a "certified act of terrorism".   That exclusion also does not apply to an act which meets the criteria set forth in Paragraph 2. of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

B.  With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

C.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1.  The act resulted in aggregate losses in excess of $5 million; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyright material of ISO Properties, Inc. used with its permission.
© ISO Properties, Inc., 2002

C-15516-A
(Ed. 03/03)



THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

## CONFORMITY TO STATUTE

This endorsement modifies insurance provided under the following:

PUBLIC OFFICIALS LIABILITY POLICY

LAW ENFORCEMENT LIABILITY POLICY

It is agreed:

1. Terms and Conditions of the Policy which are in conflict with the statutes of the state shown in the Named Insured's Address in the Declarations are amended to conform to such statutes.

2. SECTION IV - CONDITIONS, paragraph 2. Cancellation, is amended to conform with the provisions of the ISO Cancellation and Nonrenewal form attached to the Policy.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured  Williamsport, City of _____      Policy Number  419711301 _____

Endorsement Effective _____      Countersigned By _____
                                                              (Authorized Representative)

G-129306-A
(ED. 11/97)                                          Endorsement Number: _____

# COMMON POLICY CONDITIONS

ll Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

IL 00 17 (11/85)                                    Page 1 of 2

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 (11/85)                                     Page 1 of 2



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PENNSYLVANIA CHANGES-
## CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART*
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. The Cancellation Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation

3. Cancellation Of Policies In Effect For 60 Days Or More

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be

IL 02 46 (9/96)           1of 2



mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. Nonrenewal

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. Increase Of Premium

f we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1996

IL 02 46 (9/96)



# Law Enforcement Liability Policy

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the law enforcement agency shown as the Named Insured in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V — DEFINITIONS

## SECTION I — COVERAGE

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as compensatory civil damages because of "injury". This insurance applies only to such "injury" that results from a "wrongful act" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any incident or "wrongful act" and settle, subject to condition 14., any claim or "suit". But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE AND DEDUCTIBLE (Section III);

      (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

   b. This insurance applies to a "wrongful act" only if:

      (1) The "wrongful act" takes place in the "coverage territory"; and

      (2) The "wrongful act" occurs during the policy period.

2. **Exclusions.**

   This insurance does not apply to

   a. Any obligations that insureds or their insurance companies have under workers compensation, unemployment compensation, disability benefits or similar laws.

   b. Damages sustained by any of your law enforcement officers or employees (including those that are auxiliary or volunteer), if such damages are directly or indirectly related to their employment by you.

   c. Damages arising out of the ownership, maintenance, management, operation, use, control, loading or unloading of any "auto", or motor or propelled vehicle of any kind, watercraft or aircraft:

      (1) Owned or operated by, rented or loaned to any insured; or

      (2) Operated by any person on behalf of, or in the course of employment by, an insured.

   d. Liability assumed under any contract or agreement except mutual law enforcement assistance agreements between political subdivisions.

   e. Claims arising out of any act, "wrongful act", service or duty for anyone other than you.

      This exclusion does not apply if the act or service is a result of a mutual law enforcement assistance agreement or contract between political subdivisions, nor does it apply to any activities approved by you.

   f. Claims arising out of the insured's employment policies or practices, including, but not limited to application for employment, refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment (including sexual harassment), humiliation, discrimination or violation of civil rights.

g. Any claim that results in a final legal determ-
ination that any insured has:

   (1) Committed any criminal, dishonest, bad faith
      or fraudulent act, error or omission or
      intentional malicious act, error or omission; or

   (2) Deliberately violated, or had knowledge of or
      consented to the violation of, any federal,
      state or local statute, ordinance, rule or
      regulation.

This exclusion does not apply to any other
insured where there is no legal finding that such
other insured actively joined in:

   (a) An act described in g. (1) above;

   (b) Or had knowledge of, or consented to, the
      violation described in g. (2) above.

h. "Property damage" to property:

   (1) Owned, used or occupied by or rented to the
      insured; or

   (2) In the care, custody or control of the insured,
      or over which the insured is, for any purpose,
      exercising physical control.

      This exclusion h. (2) does not apply to
      property on persons at the time of their arrest.

i. Any claim arising out of the:

   (1) Furnishing by an insured of services,
      materials, parts or equipment in connection
      with, or

   (2) Planning, construction, maintenance, exis-
      tence or use of any nuclear reactor or device,
      nuclear waste storage or disposal site or any
      other nuclear facility, the transportation of
      nuclear material, or the hazardous properties
      of nuclear material.

j. Any claim seeking:

   (1) Anything other than money damages;

   (2) Injunctive, mandamus, declaratory or
      equitable relief; or

   (3) Wages or other employee compensation,
      overtime or similar claims, even if designated
      as liquidated damages, under any federal,
      state or local statutes, rules, or ordinances or
      regulations or claims arising from collective
      bargaining agreements, or awards or
      settlements.

k. Any claim made against an insured by another
insured.

l. (1) Any claim, "suit", proceeding, damages, loss,
     cost or expense:

     (a) Arising out of any actual, alleged or
        threatened emission, discharge,
        dispersal, seepage, migration, release or
        escape of "pollutants" at any time; or

     (b) Arising out of any request, demand or
        order for any "clean up of" "pollutants"; or

     (c) Incurred as result of any "clean up of"
        "pollutants";

   (2) The investigation, settlement or defense of
     any claim, "suit", proceeding, damages, loss,
     cost or expense excluded by (1) above or
     alleging or in any way involving the above.

As used in this exclusion:

"Pollutants" include any noise, solid semi-solid,
liquid, gaseous or thermal irritant or contaminant,
including smoke, vapor, soot, fumes, mists, acids,
alkalis, chemicals, biological and etiologic agents
or materials, electromagnetic or ionizing radiation
and energy, genetically engineered materials,
teratogenic, carcinogenic and mutagenic
materials, "waste" and any other irritant or
contaminant.

"Waste" includes any materials to be disposed,
recycled, reconditioned or reclaimed.

"Clean up of" includes monitoring, removal, con-
tainment, treatment, detoxification or neutrali-
zation of, testing for or response in any way to, or
assessment of the effects of "pollutants".

m. Liability arising out of the rendering of, or failure to
render, professional services by a member of the
medical profession.

n. The liability of an insured for fines, penalties, costs
or expenses imposed by law or arising from any
complaint or enforcement action of any federal,
state or local governmental regulatory agency, or

damages which may be deemed uninsurable by law or under law.

o. Any claim for damages arising out of, or alleged to have arisen out of, the transmission of, or exposure to, a communicable disease.

    (1) As respects this exclusion, AIDS (Acquired Immune Deficiency Syndrome) will be considered a communicable disease.

    (2) This exclusion includes such damages claimed because of negligent training, supervision, recruitment, policies or procedures.

## Supplementary Payments

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur, subject to the deductible amount. Refer to LIMITS OF INSURANCE AND DEDUCTIBLE (Section III).

2. Up to $250 for the cost of bail bonds required because of "injury" to which this insurance applies.

3. The cost of bonds to release attachments in a "suit" we defend, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in a "suit" we defend.

6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

8. Premium on appeal bonds in any "suit" we defend.

9. Reasonable expenses incurred for "first aid" to others at the time and place of an accident, for "bodily injury" to which this insurance applies.

These payments will not reduce the Limits of Insurance.

## SECTION II—WHO IS AN INSURED

1. You are an insured.

2. Each of the following is also an insured, but only while acting within the scope of their duties for you:

    a. Your law enforcement officers and, in the event of their death, incapacity or bankruptcy, their heirs, executors, administrators, assigns and legal representatives;

    b. The political entity or subdivision of which the law enforcement agency is a part, department or bureau and its public officials, provided such political entity or subdivision is legally constituted at the inception date of this policy; and

    c. All other employees and authorized volunteers of the law enforcement agency.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declaration and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all damages to which this insurance applies.

3. Subject to 2. above, the Each Wrongful Act Limit is the most we will pay for the sum of all damages arising out of the same "wrongful act" to which this insurance applies.

4.  a.  Subject to 3. above, the Each Wrongful Act Limit applies in excess of the Deductible shown in the Declarations. By accepting this insurance the insured agrees that such Deductible will be uninsured and borne by the insured.

b.  The terms of this insurance, including those with respect to your duties in the event of an incident, "wrongful act", claim or "suit", apply irrespective of the application of the deductible amount.

c.  We may, at our discretion, pay all or part of any deductible shown in the Declarations. Upon notice of such payment you shall promptly reimburse us for the amount we paid.

d.  Claims based on or arising out of:

(1) The same "wrongful act" or the related "wrongful acts" of one or more insureds; or

(2) Riot, insurrection or civil disturbance which results in an official proclamation of a state of emergency, temporary curfew or martial law will be considered a single claim, to which only one Each Wrongful Act Limit, and Deductible, will apply.

The Deductible, as referred to in this policy, will apply to the sum of damages and "defense expenses".

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV— CONDITIONS

1.  Bankruptcy.

Bankruptcy or insolvency of the insured will not relieve us of our obligations under this policy.

2.  Cancellation

a.  The first Named Insured shown in the Dec-larations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 60 days before the effective date of cancellation if we cancel for any other reason.

c.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. In all cases, refunded premium will be less any earned minimum premium. The cancellation will be effective even if we have not made or offered a refund.

f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

3.  Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

4.  Duties in the Event of Incident, Wrongful Act, Claim or Suit.

a.  You must see to it that we are given written notice as soon as practicable of an incident or "wrongful act" which may result in a claim. To the extent possible, notice should include:

(1) All available information about the circumstances concerning the incident or "wrongful act" including:

(a) How, when and where it took place; and

(b) The names and addresses of any witnesses and persons seeking damages; and

(2) What claim you think may result.

However, even when you notify us of an incident or "wrongful act", this does not relieve you of your

obligation to also notify us of any resulting claim or "suit".

b. When you first learn of a claim made or "suit" brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit":

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization who may be liable to the insured because of damages to which this insurance may also apply; and

(5) In no way jeopardize our rights after an incident or "wrongful act".

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for "first aid", without our written consent.

5. Examination Of Your Books And Records

We may examine audit and copy your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

6. Governmental Immunity.

Because you are a public institution, you may be entitled to governmental immunity. This policy does not constitute a waiver of any governmental immunity to which you are entitled.

7. Inspections And Surveys

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

8. Legal Action Against Us.

No legal action may be brought against us unless, as a condition precedent thereto, the insured has fully complied with all the terms of this policy. In addition, no person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on, an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. Other Insurance.

a. Except for such other insurance that is purchased specifically to be excess of the Limits of Insurance provided by this policy, the insurance provided by this policy form is excess over any other collectible insurance and its deductible or self-insured retention provisions. The presence of a deductible or self-insured retention in such other insurance will not amend the deductible provision of this policy.

b. When this insurance is excess, we will have no duty to defend any claim or "suit" that any other

insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

c. When this insurance is excess over other insurance, we will pay only our share of the damages, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the damages in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

d. When both this insurance and other insurance apply to the loss on the same excess basis, we will share with such other insurance by the method described below:

(1) If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, which comes first.

(2) If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limit of Insurance of all insurers.

## 10. Premium Audit.

If the Declarations states that the policy is subject to audit:

a. The premium shown in the Declarations is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

b. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 11. Premiums

The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

## 12. Representations.

By accepting this policy, the Named Insured agrees that:

a. The statements in the Declarations and in the application for insurance are accurate and complete;

b. Those statements are based upon representations which the insureds made to you, and which you made to us; and

c. We have issued this policy in reliance upon those representations.

## 13. Separation Of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 14. Settlement.

If the first Named Insured, on behalf of all insureds, refuses to consent, within a reasonable period of time, to any settlement offer we recommend and elects to contest the claim or continue any legal proceedings in connection with such claim then, subject to the provisions of Section III - Limits of Insurance, our liability for the claim will not exceed the amount for which the claim could have been settled, plus the cost of defense incurred by us up to the date of such refusal.

## 15. Transfer Of Rights Of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 16. Your Authority And Duties.

The first Named Insured shown in the Declarations agrees to act on behalf of all insureds with respect to cancellation, notice of any incident, "wrongful act", claim or "suit", payment or return of any premium, or consent to a claim settlement that we recommend. Each insured, by accepting this insurance, agrees to:

a. Have the first Named Insured act for them in such matters; and

b. Promptly notify the first Named Insured, in writing, of any incident or "wrongful act" which may result in a claim, or of any claim or "suit" brought against them.

## SECTION V—DEFINITIONS

1. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads.

2. "Bodily injury" means:

a. Any physical harm to a person's health, including sickness or disease; and

b. Any metal harm to, or the death of, the same person described in 2.a. above, as a direct result of such physical harm.

3. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada; and

b. All other parts of the world if:

(1) The "wrongful act" is committed by an insured whose home is in the territory described in (a.) above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in (a.) above or in a settlement to which we agree.

4. "Defense expenses" mean expenditures including, but not limited to, our costs of investigations, experts, adjustment services, legal services, court costs, and other similar expenses.

5. "First aid" means the rendering of emergency medical treatment by any of your law enforcement officers, but only when care by a licensed medical professional is not immediately available.

6. "Injury" means "bodily injury", "property damage" or "personal injury":

a. The insured did not expect or intend. "Injury" resulting from the use of reasonable force to protect persons or property will not be considered expected or intended; and

b. Arising out of the insured's duties to provide law enforcement and/or other activities approved by you.

7. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following:

a. False arrest; wrongful detention or wrongful imprisonment;

b. Malicious prosecution;

c. Assault and battery from the use of reasonable force to protect persons or property;

d. Discrimination, unless uninsurable by law;

e. Humiliation;

f. False or improper service of process;

g. Violation of property rights;

h. Violation of civil rights, unless uninsurable by law;

i. Wrongful eviction or wrongful entry, or other violations of the right of private occupancy; and

j. The oral or written publication of material that:

(1) Defames, slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(2) Violates a person's right of privacy.

However, "personal injury" does not include the oral or written publication of material in the course of, or related to, advertising, broadcasting, telecasting or videotaping activities conducted by or on behalf of any insured.

8. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

9.  "Suit" means a civil proceeding in which damages to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

10. "Wrongful act" means any actual or alleged error or misstatement or act or omission or neglect or breach of duty, including misfeasance and nonfeasance, by the insured in the discharge of duties for you.

"Wrongful act" includes allegations of malfeasance, but only if they are ultimately proven to be groundless. This insurance does not apply to malfeasance if there is a final legal determination that such has taken place.

Exhibit C

KLINE & SPECTER, P.C.
By: JAMES J. WALDENBERGER, ESQUIRE
I.D. Nos: 83837
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000

Attorney for Plaintiff

| | |
|---|---|
| NANCY ROBINSON WESTBROOKS, <br> ADMINISTRATOR OF THE ESTATE OF JAMES <br> DAVID ROBINSON, deceased <br> 647 Maple Street <br> Williamsport, PA 17701 <br><br> Plaintiff <br><br> v. <br><br> JONATHAN DEPRENDA <br> 2005 Blair Street <br> Williamsport, PA 17701-2871 <br> AND <br><br> WILLIAMSPORT BUREAU OF POLICE <br> 245 West Fourth Street <br> Williamsport, PA 17701 <br><br> AND <br><br> CITY OF WILLIAMSPORT <br> 33 W. 3rd Street <br> Williamsport, PA 17701 <br> Defendants | COURT OF COMMON PLEAS <br> LYCOMING COUNTY, PA <br><br> NO: 14 00573 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

I.    PARTIES

1.    Plaintiff, Nancy Robinson Westbrooks, is an adult individual with an address of 647

Maple Street, Williamsport, PA 17701. Ms. Westbooks is the mother of James David Robinson, age

42, who died on January 12, 2014. Ms. Westbrooks was appointed Administrator of the Estate of

James David Robinson on February 4, 2014.

2.       Defendant, Jonathan Deprenda, is an adult individual and resides at 2005 Blair Street, Williamsport, PA 17701-2871.

3.       Defendant, Williamsport Bureau of Police, is a governmental entity, duly organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 245 West Fourth Street, Williamsport, PA 17701.

4.       Defendant, City of Williamsport, is a governmental entity, duly organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 33 W. 3rd Street, Williamsport, PA 17701.

5.       At all relevant times, Defendant, Jonathan Deprenda, was the agent, broker, servant and/or employee of Defendants, Williamsport Bureau of Police and/or City of Williamsport, and acting within the course of his employment and scope of authority.

6.       At all relevant times, Defendants, Williamsport Bureau of Police and/or City of Williamsport, each acted and/or failed to act through their officials, agents, workers, servants, contractors, and employees, including but not limited to, Defendant Jonathan Deprenda, all of whom were acting within the scope of authority.

7.       At all relevant times, Defendants, Jonathan Deprenda, Williamsport Bureau of Police, and/or City of Williamsport, were the agents, brokers, servants, alter-egos, instrumentalities, and/or employees of each other and acting within the scope of their respective authorities.

## II.   STATEMENT OF FACTS

8.       On January 12, 2014, James David Robinson ("Mr. Robinson") was driving his vehicle on East Third Street in Williamsport, Pennsylvania.

9.       At or about the same time, Defendant, Jonathan Deprenda ("Mr. Deprenda"), was

driving his vehicle on East Third Street in excess of 100 miles per hour in a 35 mile per hour zone.

9. At approximately 6:48 p.m., Mr. Deprenda crashed into Mr. Robinson's vehicle. Mr. Deprenda was driving his vehicle in excess of 88 miles per hour, and on the wrong side of the road, at the time of the crash.

10. Mr. Deprenda was an on-duty police officer at the time and operating his vehicle on behalf of Defendants, Williamsport Bureau of Police and/or City of Williamsport.

11. Upon information and belief, the crash occurred approximately one minute after a radio call to Mr. Deprenda from the Lycoming County 911 Center indicated that the pursuit to which Mr. Deprenda was heading was over.

12. The impact by Mr. Deprenda's vehicle caused Mr. Robinson's vehicle to crash into an electrical pole and then a building, and catch on fire.

13. The aforementioned accident resulted solely from the negligence, recklessness and deliberate indifference of Defendants.

14. As the result of Defendants' negligent and reckless actions and/or omissions, Plaintiff suffered severe injuries and damages, including, but not limited to:

    a.      death;

    b.      severe pain and suffering;

    c.      various and severe and painful bodily injuries as set out in James Robinson's autopsy and medical records;

    d.      pre-impact fright;

    e.      funeral expenses;

    f.      mental anguish;

g.    disfigurement;

h.    loss of life's pleasures;

i.    lost wages;

j.    loss of future earning capacity;

k.    medical expenses;

l.    emotional distress;

m.    all damages allowable under the Survival Act, 42 Pa.C.S.A. §8302, the applicable Rules of Civil Procedure and the decisional law interpreting the Survival Act, including damages for lost earnings of the decedent between the time of his injury and his death, his total estimated future earning power less his cost of personal maintenance, and/or pain and suffering endured by Mr. Robinson prior to his death, including, but not limited to, physical pain and suffering, mental pain and suffering, mental suffering, loss of life's pleasures, disfigurement, and humiliation;

n.    all damages allowed under the Wrongful Death Act, 42 Pa.C.S.A. §8301, the applicable Rules of Civil Procedure and all decisional law interpreting the Wrongful Death Act, including, damages for medical, funeral, and burial expenses, expenses of administration, monetary support Mr. Robinson would have provided during his lifetime, value of the services provided or which could have been expected to have been performed in the future by Mr. Robinson, and all pecuniary losses suffered as a result of Mr. Robinson's death;

o.    all damages allowed under 42 Pa.C.S.A. §8528;

p.    all damages allowed under 42 Pa.C.S.A. §8553.

## COUNT I

## NEGLIGENCE

**Plaintiff, Nancy Robinson Westbrooks,
Administrator of the Estate of James David Robinson, deceased
v.
Defendants, Jonathan Deprenda, Williamsport Bureau of Police,
and City of Williamsport**

15.    Plaintiff hereby incorporates by reference paragraphs 1 through 14 as though fully set forth herein at length.

16.    At all relevant times, Defendant, Jonathan Deprenda, was the employee, agent and/or representative of Defendants, Williamsport Bureau of Police and/or City of Williamsport, and was acting within the scope of his authority and employment in the furtherance of their businesses. Accordingly, Defendants, Williamsport Bureau of Police and/or City of Williamsport, are vicariously liable for the negligent and reckless actions and/or omissions of Defendant, Jonathan Deprenda.

17.    The negligence and recklessness of Defendants consists, inter alia, of the following:

a.    failing to properly operate and control the motor vehicle;

b.    driving at an excessive rate of speed under the circumstances;

c.    failing to maintain a proper look out;

d.    crashing into Mr. Robinson's vehicle;

e.    causing the collision with Mr. Robinson's vehicle;

f.    failing to heed the traffic conditions then and there existing;

g.    failure to operate the motor vehicle in such a manner so as to avoid the

aforesaid occurrence;

h.      reckless driving;

j.      inattentive driving;

i.      violation of the laws and ordinances of the City of Williamsport and

        Lycoming County and the statutes and regulations of the Commonwealth of

        Pennsylvania governing the operation of motor vehicles on the streets and

        highways;

j.      failing to timely slow and/or stop the vehicle so as to avoid a collision;

k.      failing to exercise due care in the operation of a motor vehicle so as not to

        endanger others;

m.      violating 75 Pa.C.S.A. §3105(b)(3) by exceeding the maximum speed limit in

        such a manner so as to endanger life;

n.      violating 75 Pa.C.S.A. §3105(e) by operating the motor vehicle with reckless

        disregard of the safety of others;

18.     The above-referenced actions and omissions fall within the exceptions to governmental immunity pursuant to 42 Pa.C.S.A. §8542(b)(1).

19.     The above-referenced conduct of Defendants was the direct and proximate causes of, and/or substantial contributing factors to, Plaintiff's damages as set forth above.

WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages, and such other relief as this Court may deem just and proper.

## COUNT II
### or
### NEGLIGENCE

**Plaintiff, Nancy Robinson Westbrooks,
Administrator of the Estate of James David Robinson, deceased
v.
Defendants, Williamsport Bureau of Police and City of Williamsport**

20.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein at length.

21.     At all relevant times, Defendant, Jonathan Deprenda, was the employee, agent and/representative of Defendants, Williamsport Bureau of Police and/or City of Williamsport, and was acting within the scope of his authority and employment in the furtherance of their businesses. Accordingly, Defendants, Williamsport Bureau of Police and/or City of Williamsport, are vicariously liable for the negligent and reckless actions and/or omissions of Defendant, Jonathan Deprenda, as set forth above.

22.     In addition to being vicariously liable for the negligent and reckless actions and/or omissions of Defendant, Jonathan Deprenda, Defendants, Williamsport Bureau of Police and/or City of Williamsport, are directly liable for their negligent and reckless actions and/or omissions, which consist, inter alia, of the following:

      a.     failing to supervise Jonathan Deprenda;

      b.     failing to properly train Jonathan Deprenda;

      c.     failing to create, implement, and/or enforce policies and procedures relating to the operation of motor vehicles;

      d.     failing to create, implement, and/or enforce policies and procedures relating

to responding to calls involving other officers;

     c.     failing to create, implement, and/or enforce policies and procedures relating

to responding to calls which have been called off and/or reported to be over.

     23.     The above-referenced actions and omissions fall within the exceptions to governmental immunity pursuant to 42 Pa.C.S.A. §8542(b)(1).

     24.     The above-referenced conduct of Defendants was the direct and proximate causes of, and/or substantial contributing factors to, Plaintiff's damages as set forth above.

     WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages, and such other relief as this Court may deem just and proper.

## COUNT III

### CIVIL RIGHTS

### VIOLATION OF 42 U.S.C. SEC. 1983

**Plaintiff, Nancy Robinson Westbrooks,
Administrator of the Estate of James David Robinson, deceased
v.
Defendant, Jonathan Deprenda**

     25.     Plaintiff hereby incorporates by reference paragraphs 1 through 24 as though fully set forth herein at length.

     26.     At all relevant times, Defendant, Jonathan Deprenda, was acting under the color of the law, to wit, under the color of statutes, regulations, policies, customs and usages of the Commonwealth of Pennsylvania and/or the City of Williamsport.

     27.     At all relevant times, Defendant, Jonathan Deprenda, was the employee, agent and/representative of Defendants, Williamsport Bureau of Police and/or City of Williamsport, and

was acting within the scope of his authority and employment in the furtherance of their businesses. Accordingly, Defendants, Williamsport Bureau of Police and/or City of Williamsport, are vicariously liable for Defendant, Jonathan Deprenda's violations of 42 U.S.C. Sec. 1983 and/or deliberate indifference to the constitutional rights of Mr. Robinson.

28.   Defendant, Jonathan Deprenda's violations of 42 U.S.C. Sec. 1983 and/or deliberate indifference to the constitutional rights of Mr. Robinson consist, inter alia, of the following:

a.   failing to properly operate and control the motor vehicle;

b.   driving at an excessive rate of speed under the circumstances;

c.   failing to maintain a proper look out;

d.   crashing into Mr. Robinson's vehicle;

e.   causing the collision with Mr. Robinson's vehicle;

f.   failing to heed the traffic conditions then and there existing;

g.   failure to operate the motor vehicle in such a manner so as to avoid the aforesaid occurrence;

h.   reckless driving;

j.   inattentive driving;

i.   violation of the laws and ordinances of the City of Williamsport and Lycoming County and the statutes and regulations of the Commonwealth of Pennsylvania governing the operation of motor vehicles on the streets and highways;

j.   failing to timely slow and/or stop the vehicle so as to avoid a collision;

k.   failing to exercise due care in the operation of a motor vehicle so as not to

endanger others;

m.   violating 75 Pa.C.S.A. §3105(b)(3) by exceeding the maximum speed limit in

such a manner so as to endanger life;

n.   violating 75 Pa.C.S.A. §3105(e) by operating the motor vehicle with reckless

disregard of the safety of others;

o.   driving far in excess of the speed limit despite knowledge that the pursuit to

which he was responding was over;

p.   exceeding the speed limit by over 70 miles per hour;

q.   exceeding the speed limit by over 50 miles per hour at the time of the crash.

29.   The above-referenced actions constitute violations of 42 U.S.C. Sec. 1983, the

Fourteenth Amendment to the United States Constitution, and/or Mr. Robinson's right to substantive

due process.

30.   The above-referenced actions constitute a deliberate indifference to, and/or reckless

disregard for, Mr. Robinson's safety and/or constitutional right to life.

31.   The above-referenced actions are outrageous, egregious, and conscience-shocking,

and rise to a level of intention to cause harm.

32.   The above-referenced actions were the direct and proximate causes of, and/or

substantial contributing factors to, Plaintiff's damages as set forth above.

WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and

severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages,

and such other relief as this Court may deem just and proper.

## COUNT IV

### CIVIL RIGHTS

### VIOLATION OF 42 U.S.C. SEC. 1983

**Plaintiff, Nancy Robinson Westbrooks,
Administrator of the Estate of James David Robinson, deceased
v.
Defendants, Williamsport Bureau of Police and City of Williamsport**

33.     Plaintiff hereby incorporates by reference paragraphs 1 through 32 as though fully set forth herein at length.

34.     At all relevant times, Defendants, Williamsport Bureau of Police and City of Williamsport, were acting under the color of the law, to wit, under the color of statutes, regulations, policies, customs and usages of the Commonwealth of Pennsylvania and/or the City of Williamsport.

35.     Upon information and belief, Defendants, Williamsport Bureau of Police and City of Williamsport, possessed actual and/or constructive notice of Mr. Deprenda's, and/or other police officers', prior operation of motor vehicles with reckless disregard and/or deliberately indifference to the safety and/or constitutional rights of others.

35.     Defendants, Williamsport Bureau of Police's and City of Williamsport's violations of 42 U.S.C. Sec. 1983 and/or deliberate indifference to the constitutional rights of Mr. Robinson consist, inter alia, of the following:

a.      failing to supervise Jonathan Deprenda;

b.      failing to properly train Jonathan Deprenda;

c.      failing to create, implement, and/or enforce policies and procedures relating to the operation of motor vehicles;

d.      failing to create, implement, and/or enforce policies and procedures relating to responding to calls involving other officers;

– 12 –

    e.    failing to create, implement, and/or enforce policies and procedures relating

to responding to calls which have been called off and/or reported to be over;

    f.    employing policies and/or procedures which recklessly disregard, and/or are

deliberately indifferent to, the safety and constitutional rights of the public

relating to the operation of motor vehicles by police officers;

    g.    engaging in customs and/or practices which recklessly disregard, and/or are

deliberately indifferent to, the safety and constitutional rights of the public

relating to the operation of motor vehicles by police officers;

    h.    failure to appropriately discipline Mr. Deprenda for prior operation of a

motor vehicle with reckless disregard and/or deliberately indifference to the

safety and/or constitutional rights of others.

29.    The above-referenced actions constitute violations of 42 U.S.C. Sec. 1983, the

Fourteenth Amendment to the United States Constitution, and/or Mr. Robinson's right to substantive

due process.

30.    The above-referenced actions constitute policies and/or practices which evidence a

deliberate indifference to, and/or reckless disregard for, Mr. Robinson's safety and/or constitutional

right to life.

31.    The above-referenced actions are outrageous, egregious, and conscience-shocking,

and rise to a level of intention to cause harm.

32.    The above-referenced actions were the direct and proximate causes of, and/or

substantial contributing factors to, Plaintiff's damages as set forth above.

WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and

severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages,

and such other relief as this Court may deem just and proper.

## FIRST CAUSE OF ACTION - WRONGFUL DEATH

**Plaintiff, Nancy Robinson Westbrooks,**
**Administrator of the Estate of James David Robinson, deceased,**
**v.**
**All Defendants**

33.   Plaintiff hereby incorporates by reference paragraphs 1 through 32 as though fully set forth herein at length.

34.   Mr. Robinson left surviving him the following person who may be entitled to recover for damages under the Wrongful Death Act:

> (a)   Nancy Robinson Westbrooks
>        647 Maple Street
>        Williamsport, PA 17701

35.   Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, deceased, brings this Wrongful Death action on behalf of the beneficiary under and by virtue of the Acts of 1855, P.L. 309, as amended, 42 Pa. C.S.A. Sec. 8301, the applicable Rules of Civil Procedure, and decisional law.

36.   As a result of the acts and omissions of the defendants, as set forth above, Mr. Robinson was caused grave injuries and death resulting in the entitlement to damages by said beneficiary under the Wrongful Death Act.

37.   Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims damages for all administrator's expenses recoverable under the Wrongful Death Act, including, but not limited to, damages for hospital, medical, funeral, and burial expenses, and expenses of administration necessitated by reason of injuries causing decedent's death.

38.   Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims damages for loss of the monetary support that decedent would have provided to his

beneficiary during decedent's lifetime, including, but not limited to earnings, maintenance, support, and other similar losses recognized under the Wrongful Death Act that she would have received from him for the rest of decedent's natural life.

39.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims under the Wrongful Death Act, damages for the services provided or which could have been expected to have been performed in the future by decedent.

40.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims damages under the Wrongful Death Act, for all pecuniary losses suffered by beneficiary.

41.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims damages under the Wrongful Death Act, an amount to compensate beneficiary for the loss of contribution between the time of death and today, and the amount of support that decedent would have contributed in the future.

42.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims, on behalf of the Wrongful Death Act beneficiary, damages for emotional and profound loss, and other similar losses recognized under the Wrongful Death Act.

43.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims, on behalf of the Wrongful Death Act beneficiary damages under the Wrongful Death Act, damages for the loss of companionship, services, comfort, society, guidance, solace, and protection of decedent.

44.     Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims damages under the Wrongful Death Act, and the full measure of damages allowed

under the law and under the categories of administrator's expenses, support, and services as defined under the laws of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages, and such other relief as this Court may deem just and proper.

### SECOND CAUSE OF ACTION- SURVIVAL ACTION

**Plaintiff, Nancy Robinson Westbrooks,**
**Administrator of the Estate of James David Robinson, deceased**
**v.**
**All Defendants**

45.     Plaintiff hereby incorporates by reference paragraphs 1 through 44 as though fully set forth herein at length.

46.     Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, brings this Survival Action on behalf of the Mr. Robinson under and by virtue of 42 Pa.C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law.

47.     As a result of the actions and/or omissions of Defendants, as set forth above, Mr. Robinson was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Survival Act.

48.     As a result of the death of Mr. Robinson, his Estate has been deprived of the economic value of his life expectancy, and plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, and on behalf of Survival Act beneficiary, claim under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of his death,

-16-

including all loss of income, earnings, retirement income and benefits and Social Security income, until death, as a result of decedent's death.

49.    Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, and on behalf of Survival Act beneficiary, further claims under the Survival Act, the total amount that decedent would have earned between today and the end of his life expectancy. Plaintiff especially seeks the total amount of future lost earning capacity, including, but not limited to the total amount of future lost earnings and earning capacity, including, but not limited to the total lost future net earnings for decedent, less his cost of personal maintenance.

50.    Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, deceased, and on behalf of Survival Act beneficiary, further claims, under the Survival Act, damages for embarrassment, disfigurement, humiliation, and mental anguish.

51.    Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, on behalf Survival Act beneficiary, further claim, under the Survival Act, damages for the conscious pain and suffering, and inconvenience endured by decedent prior to his death, including, but not limited to physical pain and suffering, mental pain and suffering, and the fright and mental suffering attributed to the peril leading to decedent's death.

52.    Plaintiff, Nancy Robinson Westbrooks, as Administrator of the Estate of James David Robinson, claims the full measure of damages under the Survival Act and decisional law interpreting said Act.

WHEREFORE, Plaintiff demands judgment against each named Defendant, jointly and severally, for a sum in excess of Fifty Thousand ($50,000.00) Dollars, for compensatory damages, and such other relief as this Court may deem just and proper.

Respectfully submitted,

KLINE & SPECTER, P.C.

Dated: 5/14/14       By: _____

JAMES J. WALDENBERGER, ESQUIRE
Attorney for Plaintiff

## VERIFICATION

I, Nancy Robinson Westbrooks, Administrator of the Estate of James David Robinson, deceased, hereby state that I am the Plaintiff in this action and that the facts set forth in the foregoing Amended Complaint are true and correct to the best of my knowledge, information and belief. I understand that this statement is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.


Date: 5/16/14                         Nancy Robinson Westbrooks
                                      Nancy Robinson Westbrooks

Exhibit D

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY ROBINSON WESTBROOKS, ADMINISTRATOR OF THE ESTATE OF JAMES DAVID ROBINSON, deceased | : : : : | |
| Plaintiff | : : | Civil Action No. 14-1114 |
| v. | : : | |
| JONATHAN DEPRENDA, *ET. AL.* | : : | |
| Defendants | : | |

### ORDER APPROVING SETTLEMENT AND ORDER FOR DISTRIBUTION

AND NOW, on this 16th day of November 2015, upon consideration of Plaintiff's Petition for Approval of Settlement, Allocation of Settlement Proceeds between Wrongful Death and Survival Claims, and Approval of Distribution of Settlement Proceeds, it is hereby ORDERED and DECREED that Petitioner is authorized to enter into a settlement with the defendants in the gross sum of $1,000,000.00.

It is further ORDERED and DECREED that the total proceeds, including settlement proceeds, be allocated and distributed as follows:

| | | |
|---|---|---|
| TO: | Kline & Specter, P.C. – fee | $333,333.33 |
| TO: | Kline & Specter, P.C. – reimburse costs | $27,434.36 |

The balance of $639,232.31 is hereby allocated 85% to the wrongful death action and 15% to the survival action distributable as follows:

(CONTINUE TO NEXT PAGE)

<u>Wrongful Death Action – 85% of $639,232.31</u>

    TO:   Nancy Westbrooks                  $543,347.46

<u>Survival Action – 15% of $639,232.31</u>

    TO:   Nancy Westbrooks, Administratrix of
              the Estate of James Robinson, deceased     $95,884.85

BY THE COURT:

_____ J.

# EXHIBIT A

Case 4:14-cv-01114-JEJ   Document 37   Filed 11/16/15   Page 4 of 8
Case 4:14-cv-01114-JEJ   Document 36-2   Filed 11/13/15   Page 2 of 2

# 𝕾𝖍𝖔𝖗𝖙 𝕮𝖊𝖗𝖙𝖎𝖋𝖎𝖈𝖆𝖙𝖊

𝕮𝖔𝖒𝖒𝖔𝖓𝖜𝖊𝖆𝖑𝖙𝖍 𝖔𝖋 𝕻𝖊𝖓𝖓𝖘𝖞𝖑𝖛𝖆𝖓𝖎𝖆            { ss:
𝕮𝖔𝖚𝖓𝖙𝖞 𝖔𝖋 𝕷𝖞𝖈𝖔𝖒𝖎𝖓𝖌

I, Annabel Miller, Register of Wills in and for Lycoming County, Pennsylvania, DO HEREBY CERTIFY that on the 4th day of February, 2014,   NANCY ROBINSON WESTBROOKS was duly and legally appointed as Administratrix of the estate of JAMES DAVID ROBINSON, Late of Lycoming County, Pennsylvania, and having been duly qualified as such according to law, as can be verified by reference to the records in my office, and that Letters of Administration were granted to her which have not been revoked.

WITNESS my hand and seal of office, at Williamsport, in the County aforesaid, this 4th day of February, 2014.

Date of Death   1/12/2014
Social Security No.   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             *Annabel Miller*
                                              Register of Wills



NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

Case 4:19-cv-00170-MWB   Document 1-2   Filed 01/30/19   Page 138 of 157

Case 4:14-cv-01114-JEJ   Document 37   Filed 11/16/15   Page 5 of 8
Case 4:14-cv-01114-JEJ   Document 36-3   Filed 11/13/15   Page 1 of 2

# EXHIBIT B

## ESTATE OF JAMES ROBINSON, DECEASED

### KLINE & SPECTER, P.C.
### LEGAL COSTS AND EXPENSES

MEDICAL RECORDS

| TOTAL MEDICAL RECORDS EXPENSE | 4,500.00 |
|---|---|

EXPERT REVIEW

| TOTAL EXPERT REVIEW EXPENSE | 17,100.66 |
|---|---|

MISCELLANEOUS

| | |
|---|---|
| Messenger/Courier/UPS/Fed-Ex | 1,389.20 |
| Filing/Service/Court/Witness Fees | 830.28 |
| Postage | 97.22 |
| Telephone/Facsimile | 498.39 |
| Photocopying/Color copying | 1,629.73 |
| Travel/Lodging/Meals | 1,379.38 |
| Research | 9.50 |
| TOTAL MISCELLANEOUS EXPENSE | 5,833.70 |

| TOTAL KLINE & SPECTER, P.C. COSTS | $27,434.36 |
|---|---|

# EXHIBIT C

## CERTIFICATION OF NANCY WESTBROOKS

1.   I, Nancy Westbrooks, am Plaintiff in the matter of Westbrooks v. Jonathan Deprenda, et al., U.S.D.C.M.D.Pa., Docket No. 14-cv-01114, and was the mother of James Robinson.

2.   I was represented by Shanin Specter, Esquire, James J. Waldenberger, Esquire, and Braden R. Lepisto, Esquire of Kline & Specter, P.C.

3.   I am completely and totally satisfied with my legal representation in this matter.

4.   I was provided, and read, the Petition for Settlement Approval.

5.   I approve the settlement of $1,000,000.00 to resolve all claims against all defendants.

6.   I approve my attorneys' fee of $333,333.33 and costs of $27,434.36.


NANCY WESTBROOKS, Petitioner and
Administratrix of the Estate of James
Robinson, deceased

Dated: 11/12/2015

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY ROBINSON WESTBROOKS,<br>ADMINISTRATOR OF THE ESTATE OF<br>JAMES DAVID ROBINSON, deceased | : <br> : <br> : |
|     Plaintiff | : |
| | :     Civil Action No. 14-1114 |
|     v. | : |
| JONATHAN DEPRENDA, *et al.* | : |
|     Defendants | : |

### PLAINTIFF'S PETITION FOR
### APPROVAL OF SETTLEMENT,
### ALLOCATION OF SETTLEMENT PROCEEDS
### BETWEEN WRONGFUL DEATH AND SURVIVAL CLAIMS,
### AND APPROVAL OF DISTRIBUTION OF SETTLEMENT PROCEEDS

Plaintiff, Nancy Robinson Westbrooks, Administratrix of the Estate of James David

Robinson, deceased, by and through her attorneys, Kline & Specter, P.C., respectfully request

this Honorable Court enter an Order approving a settlement of $1,000,000.00, allocating the

settlement proceeds between the Wrongful Death and Survival claims, and distributing the

settlement proceeds, as follows:

    1.    This is case arises out of a motor vehicle accident between Officer Jonathan

Deprenda of the City of Williamsport's police department and Plaintiff's decedent, James

Robinson, on January 12, 2014. Mr. Robinson was driving his vehicle on East Third Street in

Williamsport, Pennsylvania. At or about the same time, Officer Deprenda was driving his

vehicle on East Third Street in excess of 100 miles per hour in a 35 mile per hour zone. At

approximately 6:48 p.m., Officer Deprenda crashed into Mr. Robinson's vehicle. At the moment

of the crash, Officer Deprenda was driving his vehicle in excess of 88 miles per hour, and on the

wrong side of the road.  The impact by Officer Deprenda's vehicle caused Mr. Robinson's vehicle to crash into an electrical pole and then a building, and catch on fire.  Mr. Robinson died from the injuries suffered in the crash.

    2.     Following motion practice at the onset of this litigation, the parties participated in settlement negotiations with the assistance of the Honorable John E. Jones III.  Along with telephone conferences, Judge Jones conducted an in-person settlement conference on September 16, 2015.  Plaintiff Nancy Westbrooks was personally present for part of the negotiations.  After a full day of negotiations, no agreement was reached.  However, the parties continued to negotiate, with the assistance of Judge Jones, and came to a resolution on November 2, 2015.

    3.     The parties agreed to settle the case for $1,000,000.00 and the following non-economic terms:

        a.     Williamsport City Council will issue a public apology to Ms. Westbrooks;

        b.     Williamsport will re-name the Cultural Arts Grant Program in honor of Mr. Robinson and will fund it at a $3,000 level for the next ten years;

        c.     Williamsport will erect a plaque in Mr. Robinson's honor in a City building;

        d.     Williamsport will adopt a new pursuit policy with input from Plaintiff and Plaintiff's counsel; and,

        e.     Williamsport will provide additional training for all Williamsport Police Officers on emergency vehicle operation.

    4.     It should be noted that Plaintiff's counsel is working to recover Mr. Robinson's underinsured motorist coverage limit of $25,000.00 from Progressive Casualty Insurance Company, which provided underinsured motorist coverage to Mr. Robinson as of the time of the accident.  When the UIM claim is resolved, Plaintiff will file a supplemental Petition addressing that settlement.

2

5.     James Robinson's date of birth was January 28, 1971 and his social security number was 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. Mr. Robinson died on January 12, 2014.

6.     Nancy Westbrooks was James Robinson's mother. Her date of birth is December 30, 1951, her social security number is ████4560, and her address is 647 Maple Street, Williamsport, Pennsylvania 17701.   On February 4, 2014, Ms. Westbrooks was appointed Administratrix of the Estate of James Robinson, deceased by the Register of Wills of Lycoming County. (See Letters of Administration, attached as Ex. A.)

7.     As of the time of his death on January 12, 2014, James Robinson was unmarried and left no issue surviving him.

8,     This settlement is proper because:

(a)     This was a complex case with catastrophic injuries in which liability was vigorously defended on factual and legal grounds.

(b)     Defendant presented several defenses.  First, while Plaintiff likely would have prevailed on her negligence claims against Williamsport and Officer Deprenda, she faced significant challenges in proving her civil rights claims against either defendant.  In order to succeed on the civil rights claims, Plaintiff would have had to prove that Officer Deprenda's conduct "shocked the conscience" and that Williamsport instituted an unconstitutional custom, policy, or practice that caused Mr. Robinson's death.  Defendants moved to dismiss Plaintiff's claims arguing that she failed plead facts sufficient to state causes of action.   Although Defendants' Motion was denied, they would have filed a Motion for Summary Judgment on these issues and presented factual defenses on these issues.  Although Plaintiff expected to prevail at the summary judgment stated, admittedly, it would be a close call.  On the issue of police officers engaging in conduct that "shocks the conscience," courts throughout the country

3

often have dismissed claims involving somewhat similar circumstances. As for the claims against Williamsport, Defendants have represented to Plaintiff that Williamsport did not have a custom, policy, or practice that authorized officers to engage in the type of reckless behavior engaged in by Officer Deprenda. According to Williamsport, the criminal case against Officer Deprenda, in part, was based on the fact that he violated standing policies, procedures, and training. Establishing at trial that Defendants violated Mr. Robinson's civil rights would have been a significant challenge.

Establishing the civil rights claims would be necessary to obtain a recovery anywhere near the value of this case. The Pennsylvania Political Subdivision Tort Claims Act caps Defendants' liability at $500,000.00 for the negligence claims. Accordingly, Plaintiff would have needed to prevail on the civil rights claims to obtain adequate compensation for Mr. Robinson's death. Even if Plaintiff prevailed on her civil rights claims, she may have had difficulty collecting the judgment. Williamsport's insurance coverage ($500,000.00) only applies to the negligence claims. Williamsport is not covered for the civil rights claims against it and is not obligated to indemnify Officer Deprenda in connection with the civil rights claim against him. So if Plaintiff prevailed on the civil rights claims against Officer Deprenda, Plaintiff will not be able to collect that recovery from Williamsport. Given these significant challenges, the settlement is in Ms. Westbrooks' best interests.

9.   Based on the above, this case presented several substantial obstacles to a verdict in Plaintiff's favor beyond the settlement offer. Additionally, this settlement provides Ms. Westbrooks with non-economic remedies that a jury would not have been able to impose against Defendants. For these reasons, it is the professional opinion of James J. Waldenberger, Esquire, and Braden R. Lepisto, Esquire, who are undersigned counsel for Plaintiff, that the proposed

4

settlement is reasonable.

10.     The fee arrangement entered into by Petitioner provides that counsel is to receive one-third (1/3) recovery in this case, plus costs.

11.     Plaintiff's counsel advanced $27,434.36 in costs.   (See Litigation Expenses, attached as Ex. B.)  There was no guarantee that these costs ultimately would be recovered.  In the opinion of the undersigned, these costs were reasonable and necessary for the investigation and litigation of this case.

12.     Pursuant to the one-third (1/3) contingent fee agreement, counsel requests a fee in the sum of $333,333.33.  In the opinion of the undersigned, this fee is reasonable.

13.     Petitioner requests allocation of the net proceeds of the settlement after deduction of costs and attorney's fees, $639,232.31, as follows:

>     Wrongful Death Claim      85%
>
>     Survival Claim            15%

14.     Pursuant to the Pennsylvania Wrongful Death Act, the sole beneficiary of the Wrongful Death claim is Petitioner Nancy Westbrooks.

15.     Pennsylvania law supports a presumption in favor of wrongful death beneficiaries over estate beneficiaries (the Survival Action), warranting allocation of 85% of the net recovery to wrongful death. See Krause v. B & O Railroad, 33 Pa. D.&C. 3d 458 (1983).   Notably, a portion of the claim would have involved the loss of James Robinson's services under the Wrongful Death Act, 42 Pa.C.S.A. §8301.  Damages for wrongful death are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death. The Wrongful Death Statute, 42 Pa.C.S.A. Sec. 8301 (Purdon 1982), compensates the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. Sinn v.

Bird, 486 Pa. 146, 151 n. 3, 404 A.2d 672, 675 n. 3 (1979). This includes the value of services the victim would have rendered to his family if he had lived. Heffner v. Allstate Insurance Co., 265 Pa.Super. 181, 401 A.2d 1160 (1979), aff'd 491 Pa. 447, 421 A.2d 629 (1980). Slaseman v. Myers, 309 Pa.Super. 537, 455 A.2d 1213 (1983), see also Mecca v. Lukasik, 366 Pa. Super. 149, 163, 530 A.2d 1334, 1341 (1987) ("Damages for wrongful death are the loss of decedent's life and the loss to his or her family.")

In addition, the Pennsylvania Superior Court, in Rettger v. UPMC, 991 A.2d 915 (Pa. Super. 2010), held that damages for the "value of services," under the Wrongful Death Act, includes "society and comfort." In Rettger, a jury awarded $2.5 million in Wrongful Death damages to the parents of Michael Rettger, who was twenty-four years old, unmarried and had no children. Defendant sought *remittitur* of the Wrongful Death award on the basis that "services" include "little more than the value of household chores." However, the Superior Court disagreed and held as follows:

> "Damages for wrongful death are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death." *Thus, members of the decedent's family enumerated in the Wrongful Death Act may recover not only for medical, funeral and estate administration expenses they incur, but also the value of his services, including society and comfort.*
>
> UPMC's argument seeks to diminish the value of "services" for which decedent's family members, namely his parents, may be compensated, implying that compensable "services" include little more than the value of household chores. ("His only actual 'services' to his parents consisted of the performance of yard work.") *As illustrated by the foregoing discussion, however, the term clearly extends to the profound emotional and psychological loss suffered upon the death of a parent or child where the evidence establishes the negligence of another as its cause.* In this case, the jury recognized the depth of the anguish suffered by Rettger's parents, awarding them a sum which, while substantial, could not compensate them for the loss of a son they had nurtured to adulthood.

10

Id. at 932-933.   On February 16, 2011, the Pennsylvania Supreme Court denied allocator in response to Defendants' appeal of the Superior Court's decision.  Rettger v. UPMC, 15 A.3d 491 (Pa. 2011).

Consequently, Nancy Westbrooks, as the Wrongful Death Act beneficiary, is permitted to recover the "value of services," which includes "profound emotional and psychological loss," as explained in Rettger v. UPMC, 991 A.2d 915 (Pa. Super. 2010), alloc. denied, 15 A.3d 491 (Pa. 2011).  In this circumstance, the profound emotional loss associated with losing her son, James, supports the proposed allocation.

16.    With regard to the distribution of the proceeds under the Wrongful Death Act, the Act provides that "[t]he damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy . . . ." 42 Pa. C.S. Sec. 8301.

17.    Accordingly, Petitioner respectfully requests an allocation of the settlement proceeds after deduction for attorneys' fees ($333,333.33) and legal costs ($27,434.36), which totals **$639,232.31**, as follows:

Wrongful Death Action – 85% of $639,232.31

TO:    Nancy Westbrooks                          $543,347.46

Survival Action – 15% of $639,232.31

TO:    Nancy Westbrooks, Administratrix of
       the Estate of James Robinson, deceased        $95,884.85

18.    Nancy Westbrooks has reviewed this Petition and approves the settlement and allocation set forth herein.  (See Certification of Nancy Westbrooks, attached as Ex. C.)

19.     This Petition has been forwarded to Wrongful Death/Survival Action Request, Business and Trust Evaluation Manager, Inheritance Tax Division, Bureau of Individual Taxes at the Commonwealth of Pennsylvania, Department of Revenue, Department 280601, Harrisburg, Pennsylvania 17128 via overnight mail requesting approval of the allocation recited herein.

WHEREFORE, Petitioner requests Court approval of the proposed settlement recited above and entry of the proposed Order.

Respectfully submitted,

KLINE & SPECTER, P.C.

By:    _____
       JAMES J. WALDENBERGER, ESQUIRE
       *Attorney for Plaintiff/Petitioner*

Dated: 11/13/15

10

## CERTIFICATE OF SERVICE

I, JAMES J. WALDENBERGER, ESQUIRE, hereby certify that on the date listed below,

a true and correct copy of Plaintiff's Petition for Approval of Settlement, Allocation of

Settlement Proceeds between Wrongful Death and Survival Claims, and Approval of

Distribution of Settlement Proceeds was served via e-mail upon the following:

John P. Gonzales, Esquire
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Email: JPGonzales@MDWCG.com

Ernest J. Bernabei, III, Esquire
Harvey Pennington LTD
1800 John F. Kennedy Blvd
Suite 1300
Philadelphia, PA 19103
Email: EBERNABI@HARVPENN.COM

KLINE & SPECTER, P.C.

Date: 11|13|15             BY: _____
                               JAMES J. WALDENBERGER, ESQUIRE
                               *Attorney for Plaintiff/Petitioner*

Exhibit E

# COLLIAU CARLUCCIO KEENER MORROW PETERSON & PARSONS

### ATTORNEYS AT LAW

THREE RADNOR CORPORATE CENTER
100 MATSONFORD ROAD
SUITE 200
RADNOR, PA 19087

(610) 964-5840 ▪ FAX (609) 495-8881

EDWARD M. NAPIERKOWSKI
ATTORNEY

DIRECT DIAL
(610) 964-5824

April 27, 2015

**VIA FACSIMILE AND REGULAR MAIL**
Williamsport Bureau of Police
City of Williamsport
C/O Norm Lubin, Esq.
Casale and Bonner, P.C.
33 W. 3rd Street
Williamsport, PA  17701-6518

|       |              |                                               |
|-------|--------------|-----------------------------------------------|
| RE:   | Case No.:    | 14-005473                                     |
|       | Insured:     | City of Williamsport, PA                      |
|       | Claimant:    | Estate of James David Robinson                |
|       | Date of Loss:| 01/12/2014                                    |
|       | Policy:      | LEO 419711301                                 |
|       | Issuing Co.: | National Fire Insurance Co. of Hartford (NFICH)|

Dear Mr. Lubin:

I have been asked to represent the interests of National Fire Insurance Company of Hartford ("NFICH") relating to this matter. As you are aware, NFICH issued Law Enforcement Liability Policy 41911301 (1/1/2014-1/1/2015) to the City of Williamsport ("the City"). I write to re-affirm NFICH's position that there is no insurance coverage available to the City under the Policy for the claims at issue in the Estate of Robinson v. Deprenda, et al. ("Robinson Lawsuit").

The City is aware that NFICH is participating in its defense in the Robinson Lawsuit under Business Auto Policy MNA 410708561. The City is likewise aware that NFICH has denied coverage under the Law Enforcement Liability Policy.

By way of background, the City was sued by the Estate of James Robinson ("Estate"). Robinson was killed when he was struck by a City police vehicle driven by Jonathan Deprenda. Mr. Deprenda was an employee of the Williamsport Police Department and, at the time of the accident, was in the course and scope of his job duties. There are various counts in the Robinson

Williamsport Bureau of Police
April 27, 2015
Page 2

Lawsuit filed in state court in Lycoming County, Pennsylvania. Those counts are as follows: A) Negligence; B) Violation of Civil Rights; C) Violation of 42 U.S.C. § 1983; D) Wrongful Death; and E) Survival Action.

The Insuring Agreement for the Law Enforcement Liability Policy provides in relevant part as follows:

> *1.  Insuring Agreement.*
>
> > *a.  We will pay those sums that the insured becomes legally obligated to pay as compensatory civil damages because of "injury."   This insurance applies only to such "injury" that results from a "wrongful act" to which this insurance applies.*

"Wrongful act" is defined in the policy as:

> *10.  "Wrongful act" means any actual or alleged error or misstatement or act or omission or neglect or breach of duty, including misfeasance and nonfeasance, by the insured in the discharge of duties for you.*
>
> *"Wrongful act" includes allegations of malfeasance, but only if they are ultimately proven to be groundless.  This insurance does not apply to malfeasance if there is a final legal determination that such has taken place.*

The Law Enforcement Liability Policy responds to damages because of "injury." "Injury" means "bodily injury," "property damage," or "personal injury" that the insured did not expect or intend. "Bodily injury" is defined as:

> *2.   "Bodily injury" means:*
>
> > *a.  Any physical harm to a person's health, including sickness or disease; and*
>
> > *b.  Any mental harm to, or the death of, the same person described in 2.a. above, as a direct result of such physical harm.*

The policy contains the below definition of "personal injury":

> *7.   "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following: . . .*
>
> > *h.   Violation of civil rights, unless uninsurable by law;*

Williamsport Bureau of Police
April 27, 2015
Page 3

Finally, there are certain exclusions in the Law Enforcement Liability Policy. One of those exclusions relates to damages arising out of the use of a motor vehicle. That exclusion provides that the insurance does not apply to:

> c.   *Damages arising out of the ownership, maintenance, management, operation, use, control, loading or unloading of any "auto", or motor or propelled vehicle of any kind, watercraft or aircraft:*
>
> > *(1) Owned or operated by, rented or loaned to any insured; or*
> >
> > *(2) Operated by any person on behalf of, or in the course of employment by, an insured.*

Included within the definition of "auto" is a land motor vehicle.

Pennsylvania courts have applied the automobile exclusion and upheld its validity in various circumstances including circumstances analogous to those at issue here. <u>See Countryway Ins. Co. v. Slaugenhoup</u>, 360 Fed.Appx. 348 (3d Cir. 2010); <u>Wilcha v. Nationwide Mut. Fire Ins. Co.</u>, 887 A.2d 1254 (Pa. Super. 2005); <u>National Cas. Co. v. Borough of Wyomissing</u>, 57 Fed.Appx. 62 (3d Cir. 2003); <u>Pulleyn v. Cavalier Ins. Corp.</u>, 351 Pa. Super. 347, 505 A.2d 1016 (1986).

It is my understanding that the City maintains there is coverage under the Law Enforcement Liability Policy because the case here involves separate claims of civil rights violations. In that regard, the relatively recent case of <u>Aspen Specialty Ins. Co. v. Wilson Borough, et al.</u>, 2011 WL 711053 (E.D. Pa.) (Feb. 28, 2011) is also notable. In that case, the defendant borough was sued by the estate of a tort victim who was killed while the police were involved in a high speed chase of a felon. Like here, there were § 1983 claims made against the borough. A police professional liability policy issued to the borough contained an "automobile exclusion" for bodily injury coverage. The court determined that there was no coverage because "personal injury" must be "injury, other than bodily injury." Since the injuries sustained were "bodily injury," there was no coverage. The Court noted: "merely because personal injury can arise out of a violation of civil rights, does not mean that all civil rights violations result in personal injury rather than bodily injury." <u>Id</u>. at 3.

As referenced above, NFICH is participating in the defense of the City in the <u>Robinson</u> Lawsuit under the Business Auto Policy. NFICH is working with the City to protect the City's interests in that action. As you know, NFICH is prepared to contribute a total of $500,000 in full settlement of all claims arising out of the underlying accident.

NFICH owes no coverage to the City under the Law Enforcement Liability Policy. To that end, NFICH stands ready to do all that is necessary to protect its interests regarding this

Williamsport Bureau of Police
April 27, 2015
Page 4

matter including the filing of an affirmation declaratory judgment action in order to determine its ultimate obligations under the Law Enforcement Liability Policy.

NFICH remains willing to work with the City in order to resolve the Robinson Lawsuit. However, NFICH is not willing to concede "coverage" under the Law Enforcement Liability Policy where none exists. To the extent that the City believes that there are facts or case law which must be considered by NFICH in its coverage analysis, NFICH asks that it be immediately brought to our attention and due consideration will be given to that information.

Your questions can be directed to me at (610) 964-5824.

Very truly yours,

Edward M. Napierkowski

EMN:gdf

cc:    Barry Wood (via e-mail only)
       Ed Andrescavage (via e-mail only)

## VERIFICATION

I, **Joe Pawlak**, finance director of the City of Williamsport, verify that the facts set forth in the foregoing *Complaint,* are true and correct to the best of my knowledge, information and belief.  I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Date: ___1/7/19___                 _____
                               Joe Pawlak

12

CITY OF WILLIAMSPORT,           :   IN THE COURT OF COMMON PLEAS OF
                  Plaintiff    :   LYCOMING COUNTY, PENNSYLVANIA
                           :
        vs.                  :       DOCKET NO. 16-0520
                           :
CNA INSURANCE COMPANIES and   :
NATIONAL FIRE INSURANCE OF      :
HARTFORD,                       :
                Defendants   :

## CERTIFICATE OF SERVICE

     I, AUSTIN WHITE, hereby certify that a true and correct copy of the foregoing **Complaint** was served this ⊔ day of January, 2019, upon the following, service as indicated:

**First Class Mail, Postage Prepaid:**

CNA Insurance Companies
333 South Wabash Avenue
Chicago, Illinois 60604

National Fire Insurance Company of Hartford
333 South Wabash Avenue
Chicago, Illinois 60604

                                McCORMICK LAW FIRM

                                By:_____
                                   J. David Smith, I.D. No. 27813
                                   Austin White, I.D. No. 312789
                                   Attorneys for Plaintiff
                                   City of Williamsport

                                   835 West Fourth Street
                                   Williamsport, PA 17701
                                   (570) 326-5131